Executors of James Nolan, plaintiffs in error, vs. James N. Bolton and others, defendants in error.

A testator used this language in his will, "it is my will and desire, that at the division of my property, each one," (legatee,) "shall be charged with, and account for in said division, all money or property they have received from me, so as to make them share equally in the property to be divided, and in advances."

*Held*, that the legatees were bound to account for all money "received" by them, as much that received by them, as a loan, as that received by them, as an advancement.

Equity, from Wilkes county. Decided by Judge Thomas, March Term, 1858.

The bill of complaint in this case was filed by James N. Bolton and others, legatees under the will of James Nolan deceased, against John West and another, executors under the said will for an account.

The testator James Nolan, in the last item of his will, after appointing his executors proceeded as follows, "and it is my will and desire that at the division of my property each one shall be charged with and account for in said division all money or property they have received from me, so as to make them share equally in the property to be divided and in advances."

During his lifetime the testator had advanced to his son-in-law Charles L. Bolton, divers sums of money for which he held Bolton's notes and receipts, at the time of his death, and the question was, whether the complainants should account for these notes and receipts as advances under the above clause in the will, in the division of the testator's property.

The respondents submitted the following evidence to show the liability of the complainants, to account for these notes and receipts of Charles L. Bolton.

*John H. Dyson*, who testified that he wrote the will of Nolan, 12th of June 1856. The instructions to him by Nolan were to put in the will, that Polly Bolton's children were to

Ex'ors of Nolan vs. Bolton, et al.

be charged with the amounts of money he had let Col. Bolton have. In drawing the will at first, this was left out. After it was first drawn and read over to him, he said you have left it out, that he believed with West there would be no difficulty, but with Bolton he knew there would be, unless it was plainly stated in the will. He asked me if the laws of the State would not make them account for advances, to which witness replied that he thought not, unless so stated in the will when a man made his will. He said nothing about intending these notes and claim on Col. B. originally as advances, nothing about Col. Bolton ever agreeing they should be advances; nothing about Col. Bolton's owing him, but said there was a bundle of old papers in his possession which would show what money he had let Col. Bolton have. In a will written some 12 or 15 years since, Mr. Nolan provided that Col. Bolton was to account for money he (Nolan) had let Col. Bolton have. Mr. Nolan frequently and uniformly spoke of the money he had let Bolton have—never as money owing by Bolton.

Complainants, counsel requested the Court to strike out all the testimony, as not making out a case against the complainants. This motion was overruled by the Court.

The Court charged the jury as follows: " Gentlemen of the jury, as a general rule, money evidenced by promissory notes cannot be considered as an advancement; and in order to change it from a debt to an advancement you must believe, from the testimony, that it either was a gift by agreement, at the time the respective notes were received, or became so subsequently by agreement."

" Further, the Court charges you that at the time the will was written, if the notes remained debts up to that time, they were not changed by the testator in the will, from a debt to an advancement."

" The respondents have specially requested me to charge you as follows, that the jury should deduct from the portion

of these complainants, whatever sums of money may have passed, from time to time, into the hands of Bolton, from Nolan; whether notes were taken for such sums or not, which I refuse to do."

" Further respondents request me to charge, that when a man uses a word having a legal meaning, he is presumed to use it in that sense, when speaking of legal matters, unless a contrary meaning appears, and if Nolan said these notes in controversy were advances to Bolton, he is to be presumed, unless the contrary appears, to have used the word "advances" in its legal sense, and it is to be understood, unless the contrary appears, that all had been done which was necessary to be done, in order to constitute them advances! which I refuse to do. Further, respondents request me to charge, that the jury have a right to consider all the circumstances of the case, if proven, such as the relation of the parties, the date of the notes, their being out of date, the permitting C. L. Bolton to leave the State, the terms in which Nolan spoke of the papers in order to ascertain whether the notes were memoranda of advancements originally, or whether the notes were subsequently arranged by Nolan and Bolton, to stand for 'advancements', which I charge to be the law."

The Jury returned a verdict for the complainants: that they were not bound to account for the notes and receipts offered in evidence ; and the respondents filed their bill of exceptions assigning the same as error.

Reese, for plaintiffs in error.

Barnett & Thomas, *contra.*

*By the Court.*—Benning, J. delivering the opinion.

What was it that the testator meant the legatees to " be charged with and account for." The defendants in error, say, that it was only gifts—*advancements ;* that it was not *loans.*

His words are : " it is my will and desire that at the division of my property, each one shall be charged with, and account for, in said division, all money, or property they have received from me, so as to make them share equally in the property to be divided, and in advances."

First, let us take the words, ending with "*me.*"

" All money or property they have received from me," is an expression which, taken by itself, is broad enough to include all money or property that had proceeded from the testator to the legatees, whether it had proceeded as a gift, or as a loan. In a gift, the thing given, is "*received*" by the donee; in a loan, the thing loaned is "*received*" by the borrower. *Received,* may be equally predicated of both a gift and a loan.

It is the clear import, then, of the words ending with " me," that the legatees were to account for whatever they had received from the testator, whether they had received it as a gift, or, as a loan. It follows, therefore, that they must account for whatever they received from him unless the subsequent words, by an import at least equally clear, relieves them from the duty of accounting for some part, or the whole, of what they may have so received.

Let us then go to the subsequent words. Do they, to any extent, relieve the legatees from this duty ?

Those words are "so as to make them share equally in the property to be divided and in advances."

The word advances means, say the counsel for the defenants, gifts—*advancements ;* and does not mean loans; and, thence it follows, they insist, that the testator, notwithstanding the breadth of his first words, could not have meant the legatees to account for loans.

But, in the first place, the word, " *advances,*" when taken in its strict legal sense, does *not* mean gifts—advance*ments,* and *does* mean a sort of loan ; and when taken in its ordinary and usual sense, includes both loans and gifts—loans more readily, perhaps, than gifts.

" ADVANCES, *contracts*, are said to take place, when a factor or agent pays to his principal, a sum of money, on the credit of goods belonging to the principal, which are placed, or are to be placed, in the possession of the factor or agent, in order to reimburse himself out of the proceeds of the sale." *Bouv. Law Dic.* This gives the strict legal sense of " *advances ;*" and according to this, advances are *loans*, and nothing more.

"ADVANCEMENT, is that which is given by a father to his child, or presumptive heir, by anticipation of what he might inherit." *Id.* This is the strict legal sense of *advancement;* and it shows that *advancements*, and *advances*, when both words are taken in their strict legal sense, mean quite different things, the former, gifts; the latter, loans.

In ordinary usuage, what is the sense of " advances ?"

It is in every body's mouth to say, that a man obtained an *advance* on his cotton, or on his watch, or on his own note, and the meaning is, that the man was accommodated with a *loan* on the security of the cotton, the watch, or the note.

"ADVANCE," " 6. A giving before hand; a furnishing of something, on contract, before an equivalent is received. 7. A furnishing of money or goods for others, in expectation of reimbursement; or the property so furnished." *Webster's Dic.*

In ordinary usage, therefore, the word, advances, includes loans, and, perhaps, gifts. The counsel for the defendants, however, admit that it includes gifts; they say, it includes nothing else.

Whether, then, we take the word according to its meaning *in law*, or, according to its meaning *in common usage*, we must say, that the word includes *loans* as well as gifts.

More; we must say the same, if we take the word in the sense in which, according to the testimony, the testator *actually used* it.

According to the testimony, he meant the Bolton children to account for the money represented by the " bundle of old papers." Now, admit that the money represented by those

old papers, was loaned money, as the counsel for those children say, then, it must follow, the testimony being the criterion that he meant the children to account for *loaned* money.

And, in the second place, suppose it true, that the word, advances, as used in the will, does mean advancements, and does not mean loans, yet is it true, that it thence follows necessarily, that so much of the meaning of the previous words, as requires loans to be accounted for, is cancelled?

I think not.

The word, advances, is found in connection with the words, "the property to be divided," the whole expression being, "so as to make them share equally in the property to be divided, and in advances."

Is not the money the testator had due him on loan, to be included in the words, "the property to be divided?" They are certainly capable of including such money.

I think so.

And then, is it the dictate of reason, that the testator should wish his children to account for what was theirs, advancements, rather than for what was his, loans.

The testator may well have meant by the two terms taken together, "the property to be divided," and "advances," to cover all the ground which he had previously covered by the words, "all money or property they have received from me."

[1.] Upon the whole, then, we think, that the subsequent words do not as clearly import, that loans were not to be accounted for, as the prior words import that both loans and gifts were to be accounted for; and, consequently, we think that the subsequent words did not neutralize the prior words. The prior words not being neutralized, it follows, that they must have their full effect. And to have their full effect, the Bolton children must account for loans, as well as for advancements. We think, they will have to account for both.

This being our conclusion, it must follow, that we think the following charge erroneous.

"Further, the Court charges you, that the time the will was written, if the notes remained debts up to that time, they

were not changed by the testator in the will from a debt to an advancement."

What the Court meant by this charge, was, that if what the notes represented in the beginning were debts, and if those debts remained debts up to the making of the will, (that is, if they were not changed by the joint act of the testator and Bolton, into advancements,) the children of Bolton, were not bound to account for them.

If the testator meant those children to account for them, whether they were debts or advancements, as we have come to the conclusion that he did, then the children were bound to account for them, whether they remained in the form of debts, or were changed into the form of advancements. That the testator had the right to give his bequests on what terms he pleased, nobody will dispute. He might, therefore, give them, on the terms, that the legatees should account for money lent to them, or to their father.

What has been said, sufficiently disposes of the other charges, and the refusals to charge.

A single question remains, though it is not a question which the case, in the view that has been taken of it, requires to be decided.

Was the parol evidence admissible? Even if it was not admissible, there ought to be a new trial, as there was an error in the charge. But we are strongly inclined to think, that it was admissible.

In the view we take of the will, it is not true, that this evidence contradicted the will. The words of the will were broad enough to cover both loans and advancements, and to require an account of both. The parol evidence showed, that what the notes represented, was to be accounted for, whether what they represented, were loans or advancements. Here was no conflict between the parol evidence, and the words of the will.

Nor is it true, as we strongly incline to think, that the evidences being of the sayings of the testator, made it inad-

missible. The sayings were uttered at the time of the making of the will, and in connection with the act of making the will. They, therefore, were a part of that act, a part of the *res gestæ*. So I think. Then, they were sayings against interest, if the counsel for the defendants are right in contending that they go to show, that the notes represented *advancements*.

Advancements are gifts; and it is less to a man's interest, to admit a thing to be a gift, than it is to admit it to be a loan even though as a loan, it may be barred by the statute of limitations.

There can be no motive, in a matter of this sort, for a testator to say what is not true. If he wants to withhold his property from any one, he can do it, with or without a reason.

Judgment reversed.