(61 Misc. Rep. 537.)

### EBELING v. EBELING.

(Supreme Court, Special Term, Onondaga County.    December, 1908.)

WILLS (§ 759*)—"ADVANCE."

A will directed payment of $500 to plaintiff, his son, on the death of testator's wife; any advances to the son during the lifetime of the testator to be deducted from the $500. After payment of a legacy, the residue of the estate was devised and bequeathed to another son. There was a deficiency of the personal assets, and plaintiff sued to have the legacy declared a charge on the real estate and have it sold to pay the same. When the will was made, testator was an indorser on a note for $500, given by a firm of which plaintiff was once a member. The money for which the note was given had been obtained by plaintiff and put into the firm business; but the firm had been dissolved, and nothing had been paid on the note. *Held*, that the payment by testator of the note, which he kept among his papers, was an "advance," within such clause of the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1961–1966; Dec. Dig. § 759.*

For other definitions, see Words and Phrases, vol. 1, pp. 214–218; vol. 8, pp. 7566, 7567.]

Action by George Ebeling against Frederick H. Ebeling to have a legacy declared a charge on real estate.    Judgment for defendant.

Clarence W. Austin, for plaintiff.
Kline & Mosher, for defendant.

ANDREWS, J.    One Frederick Ebeling died on May 10, 1897. He left a will, dated May 23, 1889, by which he named his son, the defendant, Frederick H. Ebeling, executor, and devised and bequeathed to him, in trust, his estate, to be used for the support of the testator's wife, Dorothea Ebeling, during her life.    The will then continues:

"Fourth. Upon the death of my said wife I give, devise and bequeath, and direct my executor hereinafter named, to pay to my son, George Ebeling, the sum of $500. Any advances which I may make to my said son George after this date and during my lifetime shall, by my said executor, be deducted from the payment of said sum of $500 as so much paid thereon.

"Fifth. After the payment of the bequest mentioned in item 4 of this my last will and testament, I give, devise and bequeath all the rest and remainder of my estate, both real and personal, of every kind and nature unto my son Frederick H. Ebeling or his heirs to be his absolutely."

The personal estate left by the testator was not sufficient to pay his debts and the expenses of administration.    The proceeds of the real estate were used for the support of Mrs. Ebeling until her death in 1905.    Thereupon Frederick H. Ebeling claimed title thereto under the fifth clause of the will, and he has ever since been in possession of the same.    Consequently the plaintiff, the George Ebeling mentioned in the will, would have been entitled to have his legacy declared a charge upon the real estate and to have it sold, if necessary, to pay the same, except for certain facts which are said to bar his claim.

It appears that in the years 1881 and 1882 Frederick Metz and George Ebeling were engaged in business at Manlius, N. Y., as partners, under the firm name of Metz & Ebeling.    On August 30, 1882,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

George Ebeling made a note in the firm name for $500, payable one year after date, with interest, to one F. W. Richmond. He procured the indorsement of his father, Frederick Ebeling, and thereupon delivered the note in question to Mr. Richmond, and received $500, which he used in the business of the firm. Frederick Ebeling was purely an accommodation indorser upon this note, and received no benefit of any kind therefrom. The firm seems to have been dissolved in 1884. This note remained unpaid until the year 1893. At this time Mr. Richmond demanded his money. Thereupon, the indorser, Frederick Ebeling, borrowed $500 from one Henry Kaukemoller upon his own personal note, and with this $500 he paid the Richmond note. Interest on the Kaukemoller note was paid by Mr. Ebeling until his death. Thereafter the interest was paid by his executor, Frederick H. Ebeling, and finally the note itself was paid by the latter on January 2, 1902.

It is said by the defendant that when Mr. Frederick Ebeling paid the Richmond note, in 1893, he advanced to his son George Ebeling that sum, and consequently the legacy in question never become due. The question to be determined here is whether the transaction connected with the Kaukemoller note, and the payment of the Richmond note by the deceased with the proceeds thereof, constituted an advance, within the meaning of the fourth clause of the will. If it did, the plaintiff must fail in this action. If it did not, he is entitled to the relief which he demands in his complaint.

The contention of the plaintiff is (a) that by the word "advances" Mr. Frederick Ebeling meant "advancements," and (b) that there were no "advancements" within the proper definitions of that word. While he may be right as to the second, he is, I think, mistaken as to the first of these propositions.

It is true that the words "advances" and "advancements" are sometimes improperly considered as interchangeable. But there is a clear distinction between them. To advance money is to pay it before it is due, or to furnish it for a certain specified purpose, with the understanding that it, or some equivalent, is to be returned. An advancement is an irrevocable gift by a parent to a child, in anticipation of such child's future share in the parent's estate, should the parent die intestate.

"'Advancement' and 'advancements' are the terms used in the law dictionaries and in our statutes to designate money or property given by a father to his children as a portion of his estate, and to be taken into account in the final partition or distribution thereof. 'Advances' is not the appropriate term for money or property thus furnished. The latter phrase, in legal parlance, has a different and far broader signification. It may characterize a loan, or a gift, or money advanced to be repaid conditionally. 'Lent and advanced' was the language of the old common count in assumpsit for money loaned or advanced, to be repaid." Chase v. Ewing, 51 Barb. 597.

"There is a difference in legal significance between the words 'advance' and 'advancement.'" Matter of Bartlett, 4 Misc. Rep. 380, 25 N. Y. Supp. 990.

In a well-considered case the word "advances" was used in a will.

"The word 'advances' means, say the counsel for the defendants, gifts—advancements—and does not mean loans; and thence it follows, they insist, that the testator, notwithstanding the breadth of his first words, could not have meant the legatees to account for loans. But, in the first place, the word 'ad-

vances,' when taken in its strict legal sense, does not mean gifts, advancements, and does mean a sort of loan; and, when taken in its ordinary and usual sense, includes both loans and gifts—loans more readily, perhaps, than gifts. * * * 'Advancements' and 'advances,' when both words are taken in their strict legal sense, mean quite different things—the former, gifts; the latter, loans. * * * In ordinary usage, therefore, the word 'advances' includes loans, and perhaps gifts. * * * Whether, then, we take the word according to its meaning in law, or according to its meaning in common usage, we must say that the word includes loans as well as gifts." Executors of Nolan v. Bolton, 25 Ga. 352.

"It was rightly ruled that the word 'advances,' as used in one clause of the will, was not restricted to 'advancements,' within the meaning of Gen. St. c. 91, §§ 6–10, but might, in considering the bearing of that clause upon the issue of the sanity of the testator, be taken to include any benefits conferred upon his son by the testator in his lifetime, and which he might reasonably consider to have been such an appropriation of his estate as, added to what he bequeathed to him, would make him equal with his other sons." Barker v. Comins, 110 Mass. 477.

Our statute of distributions (Code Civ. Proc. § 2733) and the statute of descent (Real Property Law [Laws 1896, pp. 621, 622, c. 547] §§ 295, 296) do not use the terms indiscriminately, but refer solely to advancements. In Bowron v. Kent, 190 N. Y. 422, 83 N. E. 472, the terms are used interchangeably; but, under the facts in that case, any distinction was immaterial.

Apart from all other considerations, however, the sense in which the testator used the word in his will was apparently the legal sense. At the time the will was made he was the accommodation indorser upon an overdue note, made in the name of the firm of which his son was a member, but the money on which had been obtained by that son and put by him into the firm business. That firm had long been dissolved. If the testator paid that note, he could recover from his son the amount of the payment. Yet he was legally liable to the payee. It is said that the son had paid no interest upon the note. It may well be, therefore, that the testator contemplated the necessity of paying the note itself, and might well think of such a payment as an advance made to his son, the person who was primarily liable. This suggestion is, perhaps, strengthened by the circumstance of the identity of amount in the note and in the legacy. Up to this time Frederick Ebeling had paid nothing on behalf of his son and had given nothing to him. He had allowed the money to be raised by the use of his name, but there was nothing that could be considered either an advance or an advancement. Later, in 1893, when the testator came to pay the Richmond note—and this bears upon the meaning attached by him to the language used in his will—he did not destroy it, but kept it among his papers, apparently as evidence that, even if he did not choose to enforce it, no gift had been made of the amount involved. That he did not choose to enforce it very possibly may be explained by the clause of the will which is in question, under which he knew that the plaintiff would be charged with any advances made to him.

Giving to the word "advances" this meaning, when Mr. Ebeling, in 1893, paid the note, he clearly made an advance to his son. My opinion is, therefore, that the plaintiff has no longer a claim to the legacy in question.

Judgment accordingly.