**KIRKBRIDE et., Exrs., v. HICKOK et.**

Probate Court, Lucas County.

No. 45207.

Kirkbride, Cole, Frease & Mittendorf, Toledo, for plaintiffs. Marshall, Melhorn, Bloch & Belt, George N. Fell, Spengler, Nathanson, Hebenstreit & Heyman, William & Morgan, Henry

W. Seney, Effler, Eastman, Stichter & Smith, Theodore Mark-wood, Harry & Stanley K. Levison, Richard D. Logan, Wayne E. Shawaker, Kirkbride, Cole, Frease & Mittendorf, Donald F. Melhorn, Toledo, Theodore Van Dellen, Albion, Michigan and Oliver W. Bates, Madison, for various defendants.

## OPINION

By NORRIS, PJ.

Arthur S. Hickok died June 30, 1945, leaving Daisy S. Hickok, his widow, and two children, Clarence H. Hickok and Ruth Hickok Marvin. His will, dated February 10, 1945, was admitted to probate and letters testamentary were issued to Walter G. Kirkbride, Carl F. Eisenhour and Clarence H. Hickok and The Toledo Trust Company, on July 9, 1945.

The inventory was filed October 22, 1945, in which the assets were appraised at $4,809,880.59. A supplementary inventory was filed August 15, 1946, listing additional assets of $355,398.97. The gross estate, according to federal estate tax returns filed September 30, 1946, was $5,306,353.15. Total deductions, including a deduction of $1,575,592.44, representing the value of the residue of the estate twenty years after decedent's death, and which was deducted as a bequest to charities, were $2,055,502.71. In that return the net taxable estate was $3,250,850.44.

A tax of $1,164,794.61 was paid September 30, 1946, on the basis of the above return.

This estate has been involved in some litigation because of the question as to certain charitable bequests.

On April 27, 1949, hearing was had in this court upon the application of the executors to compromise additional estate tax in the amount of $837,000.00. Testimony adduced at the hearing showed that such compromise would be highly beneficial to the estate. The court thereupon authorized the executors to enter into this compromise.

Since there was insufficient money in the hands of the executors to pay off the compromise, this action was instituted for advice and instructions. The Hickok will authorized executors to borrow money to pay debts and taxes.

The defendants herein include all persons having any business interest in the administration of the estate of said

Arthur S. Hickok. Such an action is expressly authorized by statute; in fact, by two. different statutes, namely, §10504-66 GC, found in the chapter of the Code relating to wills, and §12102-4 GC, relating to declaratory judgments.

As will be noted, three of the four executors of the Hickok estate are individual persons. The fourth executor—The Toledo Trust Company—is an Ohio Banking Corporation with trust powers.

The application alleges that the executors are confronted with the necessity of providing cash for the immediate payment of a deficiency federal estate tax assessment and interest thereon, which now amounts to more than a million dollars; that the estate does not at the present time have on hand cash sufficient to pay said assessments; that instead of selling at this time for such purpose securities and other assets of the estate, plaintiffs deem it to be for the best interests of the estate to borrow temporarily at bank the funds necessary to pay such tax; that authority to procure such loan is expressly given to plaintiffs by Item II (b) of the will of Arthur S. Hickok, deceased, said item reading, in part, as follows:

"(b) I direct that all or any part of my debts, funeral expenses, expenses of administration and estate, succession and inheritance taxes as hereinbefore directed to be paid, may at the discretion of my executors be paid from the income and earnings of the assets of my estate and not from the principal thereof, and I direct my executors and the trustees hereinafter designated, if deemed necessary by them, to borrow funds necessary to pay the same and pledge so much as may be required of my property to secure the repayment thereof, on terms and for such period of time as they may deem proper. **I specifically authorize my corporate executor named and any corporate successor thereto to loan to my executors or to the trustees of my estate, any amount of money upon terms and at such interest rate as is then reasonable, and I declare that any such loan or loans shall not, nor shall the receipt of interest therefor, in any manner be a violation of its duty as executor or as trustee.**" (Emphasis ours.)

The application further states that, in order to provide funds for the purpose aforesaid, plaintiffs have requested The Toledo Trust Company to make and loan to plaintiffs in their

capacity as executors in the principal sum of $450,000.00, or any such lessor amount as plaintiff shall determine, such loan to be made on and subject to certain specified terms and conditions set forth in the petition for instructions and the Toledo Trust Company has indicated its willingness to make the loan subject to the authorizing order of this court.

The application further states that although the will of Arthur S. Hickok expressly authorizes the executors to borrow money and expressly authorizes the corporate executor to make such loan, plaintiffs are in doubt as to their authority to consummate the loan, and as to the authority of said Trust Company to make the loan, by reason of the provisions of §10506-49 GC, reading as follows:

"Fiduciaries shall not buy from or sell to themselves nor shall they in their individual capacities have any dealings with the estate, except as expressly authorized by the instrument creating the trust and then only with the approval of the Probate Court in each instance; but no corporate fiduciary shall be permitted to do so, any power in the instrument creating the trust to the contrary notwithstanding. Provided, however, that nothing herein contained shall be construed to prohibit a fiduciary from making an advancement when such advancement has been expressly authorized by the instrument creating the trust or when the Probate Court shall so approve."

Plaintiffs propounded three specific questions, namely,

(1) If The Toledo Trust Company makes a loan to the plaintiffs, in the nature, in the amount and for the purpose hereinabove referred to, would such law constitute an advancement within the meaning of said §10506-49 GC?

(2) Does anything in §10506-49 GC or in any other law prohibit either of the plaintiffs or The Toledo Trust Company from legally consummating said proposed loan in the amount and on substantially the terms and conditions and for the purpose hereinbefore set forth?

(3) Do the plaintiffs and The Toledo Trust Company have the right and authority under

(a) The said will of Arthur S. Hickok, and

(b) The laws of Ohio.

to make such loan in the amount and on substantially the terms and conditions and for the purpose hereinabove set forth?

158

Eminent and learned counsel representing the respective interests in this cause have filed helpful briefs.

In the first instance, it will be noted that when §10506-49 GC, was originally enacted (114 O. L. 374), it read as follows:

"Fiduciaries shall not buy from or sell to themselves, nor shall they in their individual capacities have any dealings with the estate, any power in the instrument creating the trust to the contrary notwithstanding."

In 1935, the section was amended (116 O. L. 392), and now reads as appears, supra.

It will be noted that the last sentence of the statute in question allows a "fiduciary" to make an advancement when such advancement has either been expressly authorized by the trust instrument or when the Probate Court shall so approve. That the word "fiduciary" as used in this sentence includes both an individual fiduciary and a corporate fiduciary seems clear, since the next preceeding sentence contains the words "but no corporate fiduciary shall be permitted to do so," showing when the Legislature intended to prohibit the corporate fiduciary from doing something which it permitted the individual fiduciary to do, it used apt words to that effect.

(1) This court concludes, therefore, that both an individual fiduciary and a corporate fiduciary may make an advancement under the conditions stated in the last sentence of §10506-49 GC.

Both an individual fiduciary and a corporate fiduciary may make an advancement under the conditions stated in the last sentence of §10506-49 GC, when such advancement has been expressly authorized by the instrument creating the trust or when the Probate Court shall so approve.

Obviously, the next question which arises, is whether a loan by a corporate fiduciary to the trust estate administered by it is an "advancement," within the meaning of the statute. Since the statute itself does not define the word "advancement," we must find its definition elsewhere.

We find that the word "advancement" has both a technical and a popular or general meaning.

Its technical meaning (as stated in 1 Bouvier's Law Dict. Rawles Third Revision, p. 150) is:

"A gift by anticipation from a parent to a child of the whole or a part of what it is supposed such child will inherit on the death of a parent."

It is quite clear that this is not the meaning which the Legislature had in mind in enacting §10506-49 GC. No fiduciary would be expected to make a gift to the estate.

In its popular significance, "advancement" means, among many other things,

"An advance of money or value." (Webster's New International Dictionary)

There has been brought to the court's attention the case of Executors of Nolan v. Bolton, 25 Ga. 352 (1858), in which at page 356, the court discusses the meaning of "advances" and says:

"In ordinary usage, what is the sense of 'advances'?

"It is in anybody's mouth to say that a man obtained an advance on his cotton, or on his watch, or on his note, and the meaning is that the man was accommodated with a **loan** on the security of the cotton, the watch, or the note.

'**Advance**': 6. A giving before hand; a furnishing of something on contract, before any equivalent is received.

'7. A furnishing of money or goods for others, in expectation of reimbursement; or the property so furnished.' Webster's Dictionary.

"In ordinary usage therefore, the word advances includes loans, and perhaps gifts. * * *

"Whether, then, we take the word according to its meaning in law, or according to its meaning in common usage, we must say that the word includes **loans** as well as gifts."

In Seldon v. Equitable Trust Company, 94 U. S. 419, 24 L. Ed. 249, the court was called upon to construe a federal statute defining who should be "bankers" for the purpose of taxation. The statute provided that every bank "where money is advanced or loaned on stocks, bonds, etc." 26 U. S. C. A. §1905, shall be regarded as a bank, 94 U. S. at page 421, 24 L. Ed. 249, the court says:

"In common understanding an advance or loan of money on stocks, bonds, bullion, bills of exchange or promissory notes is an advance or loan where these species of property are pledged as collaterals or are hypothecated to secure the return of the advance or the payment of the sum lent."

While there is no precedent which this court can find covering the precise questions and issues here, this court concludes that the word "advancement" has only two possible definitions—one technical and one popular, and since the technical meaning is clearly inapplicable, the popular definition must be accepted and resorted to.

(2) As shown above, the popular definition includes the making of a **loan** and that, this court thinks, is the meaning of the word "advancement" as we find it in §10506-49 GC.

Therefore, the first question propounded by the plaintiffs on page eight of their application, should be and is answered, "Yes."

The second question should be answered and is answered, "No," since this court can find no statute requiring a different answer.

Since Mr. Hickok's will expressly authorizes the corporate executor to loan money to the estate, both branches of the third question should be and are answered, "Yes."

The court therefore finds that if The Toledo Trust Company makes a loan to the plaintiffs of the nature, in the amount and for the purpose referred to in plaintiffs' petition, such loan will constitute "an advancement" within the meaning of §10506-49 GC.

(3) Further, nothing in said §10506-49 GC, or in any other law, prohibits either the plaintiffs or said The Toledo Trust Company from legally consummating said proposed loan in the amount and substantially on the terms and conditions and for the purpose set forth in plaintiffs' petition.

Further, plaintiffs and The Toledo Trust Company have the right and authority under the said will of Arthur Hickok, deceased, the consent of Daisy S. Hickok, the surviving spouse, and under the laws of Ohio, to make such loan in the amount and upon substantially the terms and conditions and for the purpose set forth in plaintiff's petition.

Counsel will prepare a journal entry consistent with the rulings and instructions herein.