SEEHORN, Appellant, v. AMERICAN NATIONAL BANK.

Division Two, February 21, 1899.

1. **Instructions**: ASSUMPTION OF ISSUE. An instruction that assumes an issue in the case to be true, should not be given.

2. ———: ———: NO EVIDENCE FOR DEFENDANT. Where allegations in the petition are denied by the answer, and evidence is introduced by the plaintiff to sustain the issue upon his part, the defendant is entitled to have the jury, or the court sitting as a jury, pass upon the issue, although defendant offers no evidence at all.

3. **Contract**: RECEIPT: DATE OF DELIVERY: PRESUMPTION. Where a receipt for certain notes has been given by the defendant to another bank, reciting that certain notes had been left with it as collateral to pay a certificate of deposit held by plaintiff's intestate against such other bank, to be held by defendant in trust for intestate, and said receipt was in the possession of the intestate prior to his death, and was thereafter found among his papers by his administrator after his death, the presumption will be indulged that it was delivered to him by defendant within a reasonable time after it was received by such other bank, since that would have been in accordance with the usual and orderly course of business with respect to such matters.

4. **Trust Funds**: SURRENDER: CONVERSION. Where collateral notes are deposited with a bank to be held by it in trust, as security for the payment of a deposit made in another bank, they can not be surrendered by it without the consent of such depositor, and if such bank surrenders them it is guilty of conversion. And in such case, it is no defense to such conversion by defendant that the depositor from time to time surrendered other collateral notes to the bank in which he had his deposit, and received others in lieu thereof.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED AND REMANDED.

PEAK & BALL and I. P. RYLAND for appellant.

(1)  The uncontradicted evidence establishes every fact which the given instructions declare entitles plaintiff to recover.  The main proposition which plaintiff's instructions contain is:  (a) If defendant received the notes as collateral and issued Thatcher its receipt therefor; and, (b) if the defendant surrendered any of these notes to the Ames State Bank, (c) without the direction, consent or knowledge of Thatcher—then, these three things being true, defendant is liable for the value of the notes so surrendered. (2) (a) There was no such understanding as the second instruction supposes, when the defendant received the collateral. (b) Thatcher was not bound by such an agreement or under-. standing, if there was one.    (c) Not only is there no evidence

that the withdrawn notes were replaced by about the same amount, but all the testimony on the subject show$ that they were not.   (3)   It is impossible to tell from the conflicting declarations of law on what facts the court based its finding; in some instructions it declares the defendant liable unless Thatcher knew of or consented to the surrender of the collateral, and according to others, it holds defendant not liable, regardless of whether Thatcher knew of or consented to the surrender.   This should work a reversal.   Krider v. Milner, 99 Mo. 149; Suddarth v. Robertson, 118 Mo. 293; Keyes v. Bank, 52 Mo. App. 330; 1 Morse on Banking (3 Ed.), secs. 194-196.

GAGE, LADD & SMALL for respondent.

(1)   The burden of proof was certainly on the plaintiff to show that the collateral for the alleged conversion of which the suit is brought, was pledged to secure one or more of the certificates mentioned in the petition.   Inasmuch as the evidence conclusively shows that this collateral was pledged to secure a certificate of deposit for $5,000 and does not show that it was the $5,000 certificate mentioned in the petition, but tends to show that it was another certificate for $5,000 issued in 1888, there is a total failure of proof of the cause of action set up in the petition.   It is therefore immaterial whether the declarations of law of which appellant complains were right or wrong.   (2)   If the collateral mentioned in the petition was not deposited for a different $5,000 certificate from that mentioned in the petition, as we claim it was, then, under all the testimony, it was a part only of the collateral to secure the payment of the certificates mentioned in the petition; another part of that collateral, and the principal part, being held by Mr. Thatcher, himself, and still another portion of it being held by the Union Investment Company, and all of it being held under one continuous contract, agreement and transaction, and therefore the collateral in the hands of the

American National Bank, there being no evidence to the contrary, was presumably to be handled the same as the collateral in the hands of Mr. Thatcher and the Union Investment Company, and the evidence shows conclusively that it was handled in exactly the same way; Mr. Thatcher himself surrendering collateral when it came due, sending it to the Ames Bank, which collected and retained the proceeds, and generally returned other collateral to him in the place of that surrendered, but not always, so that in the end Mr. Thatcher himself had, proportionately, surrendered about as much collateral without receiving anything in return, as had the American National Bank. Consequently, for this reason also, appellant wholly failed to make out a cause of action against the respondent.     (3)   It is settled law that if a contract between A. and B. for the benefit of C., is rescinded before C. assents to or acts upon it, no one has a right of action thereon.   Tribble v. Strother, 25 Ohio St. 378; Davis v. Callaway, 30 Ind. 112; Garland v. Bischoff, 47 Ind. 212; Brewer v. Maurer, 38 Ohio St. 543; Gilbert v. Sanderson, 56 Ia. 349; Jones v. Higgins, 80 Ky. 409; Talbert v. Ins. Co., 80 Ind. 434.   So in order to constitute a pledge at all, there must be a delivery of the collateral pledged to the pledgee or to a third person agreed upon between the pledgor and pledgee.   Colebrooke on Coll. Securities (2 Ed.), secs. 9 and 10;   Succession of Lanaux, 15 So. Rep. 708.   (4)   Respondent had the right to surrender and substitute the collateral as it did do.   Colebrooke on Collateral Securities (2 Ed.), secs. 14, 15 and 100.   (5)   The receipt is so incomplete and ambiguous on its face that the parol evidence which was introduced, and which in no way tends to contradict anything in the receipt itself, was perfectly competent.   Union Depot Co. v. Railroad, 131 Mo. 305; Patterson v. Camden, 25 Mo. 22; Benson v. Peebles, 5 Mo. 132; Black River Lumber Co. v. Warner, 93 Mo. 384; St. Louis Gas Co. v. St. Louis, 46 Mo. 121; Ellis v. Harrison, 104 Mo. 270; Wolfe v.

Dyer, 95 Mo. 545; Edwards v. Smith, 63 Mo. 119; Bunce v. Beck, 43 Mo. 266; Moss v. Green, 41 Mo. 390; Evans v. Western Bros. Co., 118 Mo. 554.

BURGESS, J.—Plaintiff, public administrator of Jackson county, and as such in charge of the estate of Charles Thatcher, deceased, prosecutes this suit against defendant for the alleged conversion of collaterals of the value of $6,000, the property of said Thatcher. The case was tried by the court, a jury being waived. The trial resulted in a judgment for defendant, from which plaintiff appeals.

At the time of his death Thatcher was a resident of Vermont.

On May 12, 1886, he deposited with the Ames State Bank, at Ames, Kansas, not subject to check, $7,000, and received from said bank its certificate numbered 1031, payable in one year, with interest at ten per cent per annum. On July 1, 1887, Thatcher deposited with said bank the sum of $5,000 and received from it a certificate numbered 1087, payable on demand, with interest at eight per cent. The interest was paid on this deposit to January 1, 1891. On August 1, 1887, Thatcher deposited with said bank the further sum of $1,500, and received from it a certificate numbered 1095, due in six or twelve months after date, with eight per cent interest, upon which said certificate, interest was paid by said bank to February 1, 1891.

Thereafter, in February, 1891, the Ames State Bank made an assignment for the benefit of its creditors, to E. K. Streeter, as assignee. On April 25, 1892, the assignee paid as dividends on certificate numbered 1031, the sum of $604.33; on certificate number 1087, the sum of $420.97, and on March 16, 1892, he paid on certificate number 1095, the sum of $974.25, and on April 25, 1892, the sum of $125.67, and on January 24, 1894, from the proceeds of a collateral note the sum of $204.

The petition alleges that on August 21, 1888, the Ames State Bank agreed with said Thatcher, to deposit and did deposit, with the defendant, as collateral security, for the payment of the certificates of deposits so issued and delivered to Thatcher, fifteen promissory notes, then held and owned by the Ames State Bank, aggregating the sum of $5,294.99; which defendant agreed with said Thatcher to take and hold as collateral security for said certificates of deposit, and duly issued and delivered to said Thatcher its receipt for said notes bearing.date August 21, 1888, and signed by D. V. Rieger, its cashier; and that said collateral notes were thereafter delivered to said Ames State Bank against the will and consent of said Thatcher.  All allegations in the petition were denied in the answer.

Defendant never gave to Thatcher a receipt for the notes or any of them, but did on August 21, 1888, receipt to the Ames State Bank for them, reciting in the receipt that they were as collateral to certificate of deposit held by Hon. Chas. Thatcher, and the receipt was afterwards found among Thatcher's papers by his Vermont administrator.  Whenever Thatcher deposited money with the Ames State Bank, the bank sent him collateral as security, the collateral being intended to secure all certificates of deposit, whether held by Thatcher in person or by defendant bank for him, and whenever he deposited a thousand dollars he got a thousand dollars collateral as security.

Thatcher from time to time surrendered to the Ames State Bank collateral as it approached maturity, the bank generally returning to him other collateral in lieu of that surrendered, but it does not appear from the evidence that defendant bank had any authority from Thatcher to do so.

On March 3, 1890, Thatcher wrote to the Ames State Bank, as follows:  "Please send mem. of notes deposited Am. Na. and Union Investment Co., as collateral for me.  I have 10 M. note here.  My C. D.'s amt. to $20,000."

There was also an arrangement between the Union Investment Company and the Ames State Bank, by which the treasurer of the company guaranteed $5,000 of the indebtedness of the Ames State Bank to Charles Thatcher so long as an equal amount of money remained on deposit by the Ames State Bank with that company. This was in lieu of the collateral, and was subject to withdrawal at any time by the Ames State Bank. But Thatcher was not a party to this arrangement and knew nothing about it.

Prior to March, 1890, defendant bank without the knowledge or consent of Thatcher surrendered to the Ames State Bank at its request, all of the collateral notes for which the receipt to it for Thatcher had been given, except three notes amounting to $815.

The plaintiff asked the court to declare the law as follows:

"1. The court declares the law to be that under the pleadings and the evidence the finding should be for the plaintiff for the value of such of the collateral notes mentioned in the petition as were withdrawn from defendant's custody and collected by the Ames State Bank, with six per cent interest thereon from the date of such withdrawal.

"2. If the court finds and believes from the evidence that defendant issued and delivered to plaintiff's intestate the receipt for the collateral notes described in the petition and mentioned in evidence, and that defendant agreed thereby to hold said collateral as security for the payment of the indebtedness due from the Ames State Bank to plaintiff's intestate; and if the court further finds that defendant allowed said Ames State Bank to withdraw said collateral, or any part of it, and to receive and collect the same, without the knowledge or consent of said intestate, then defendant was guilty of the conversion of so much of said collateral as was so allowed to be withdrawn, and the finding should be for the plaintiff for the value of such collateral, with interest from the date

of the conversion at the rate of 6 per cent per annum, not exceeding the amount due said estate from the Ames State Bank.

"3.   The court declares the law to be that the letter of defendant to plaintiff's intestate, dated March 17th, 1890, and the terms of the Union Investment Co:, receipt and guaranty, as copied therein, did not inform said Thatcher that said guaranty was intended as a guaranty of the debt of the Ames State Bank to the amount of $5,000, and that same was given in lieu and instead of that amount of collateral then held, or that on the delivery to defendant of such guaranty the collateral then held, or any part of it, might be withdrawn, with or without the substitution of other collateral, but said receipt and guaranty meant and means that the 'certain collateral to the amount of $5,000, held at American National Bank,' should be guaranteed by the Union Investment Co., so long as that amount of money was kept on deposit by said bank with said company; and that such guaranty was, by its terms, in addition to and not in substitution of said collateral.

"4.   The court declares the law to be that the fact, if it be a fact, that plaintiff's intestate allowed the Ames State Bank, from time to time, to withdraw certain collateral notes, held by himself, and substitute others of like or similar amounts in lieu thereof, could not justify the defendant in delivering up any part of the collateral held by it, unless this was done with the knowledge or consent of said intestate.

"5.   The court declares the law to be that no order made by the foreign administrator of said Thatcher for the delivery of the collateral held by the bank could affect the right of the estate of said deceased, if, in fact, the collateral receipted for by defendant had been wrongfully converted by defendant prior to the death of said Thatcher.

"6.   Although the court may find and believe from the evidence that plaintiff's intestate held a large amount of collateral to secure the certificates of deposit, and that he, from

time to time, allowed the Ames State Bank to withdraw portions of the collateral and substitute other notes in lieu thereof, yet defendant would be liable for permitting the withdrawal of collateral in its hands, without the knowledge or consent of Thatcher."

The court gave said declarations of law numbered 2, 3, 4, 5 and 6, but refused to give said declaration of law numbered 1; and to this order and ruling of the court plaintiff at the time duly excepted.

The defendant asked the court to declare the law as follows:

"1.    The court, sitting as a jury, declares the law to be that on the pleadings and evidence in this case the verdict and finding must be for the defendant.

"2.    The court declares the law to be that if the court, sitting as a jury, believes from the evidence that the defendant received the collateral mentioned in the petition from the Ames State Bank through the Union Investment Company, or W. P. Rice, with the understanding that said collateral was to be sent back to the Ames State Bank when it became due and to be replaced with other collateral from the Ames Bank of about the same amount of that surrendered, then Charles Thatcher was bound by said agreement and understanding, and defendant is not liable for surrendering such collateral in pursuance of such understanding, if the collateral so surrendered was replaced by other collateral of about the amount of that surrendered.

"3.    The court declares the law to be that if it appears from the evidence that Charles Thatcher knew that the collateral placed with the defendant was to be surrendered to the Ames Bank from time to time, as it fell due, and to be replaced by other collateral of about the same amount, then the defendant is not liable for any collateral so surrendered, which was so replaced.

"4.    The court, sitting as a jury, declares the law to be

that if it appears from the evidence that W. P. Rice, or the Union Investment Company, was the agent of Charles Thatcher for the purpose of directing the handling by the defendant of the collateral security mentioned in the petition, and that said securities were handled by the defendant as requested by the said Rice, or the said Union Investment Company, then the defendant is not liable in this case, and the verdict must be for the defendant."

Which said declarations, and each of them, were by the court given, over the objection of the plaintiff; and to the giving of each of them the plaintiff at the time duly excepted.

Other facts, should it be deemed necessary, will be stated in course of the opinion.

No error was committed by the refusal of the first declaration of law asked by plaintiff, because in the first place it assumes that collateral notes held by defendant bank for Thatcher were withdrawn from the bank against his will or consent, when that is one of the issues raised by the answer.

In the second place where allegations in the petition are denied by the answer, and evidence is introduced by the plaintiff to sustain the issues upon his part, the defendant is entitled to have the jury pass upon the evidence, though he offers no evidence at all. [Schroeder v. Railroad, 108 Mo. 322; Wolff v. Campbell, 110 Mo. 114; Gregory v. Chambers, 78 Mo. 298; Cleveland and Aurora M. L. Co. v. Ross, 135 Mo. 101.]

The second declaration of law given on the part of defendant is challenged upon the ground that there was no evidence tending to show that defendant received the collateral notes with the understanding that at their maturity they were to be sent back to the Ames State Bank and replaced with other notes of about the same amount. Defendant's answer to this contention is that if the collateral mentioned in the petition was not deposited for a different $5,000 certificate from that mentioned in the petition, as defendant claims it was, then,

under all the testimony, it was a part only of the collateral to secure the payment of the certificates mentioned in the petition; another part of that collateral, and the principal part being held by Thatcher, himself, and still another portion of it by the Union Investment Company, and all of it being held under one continuous contract and transaction, and therefore collateral in the hands of the defendant, in the absence of evidence to the contrary, was presumably to be handled the same as other collateral in the hands of Thatcher and the Union Investment Company, and that the evidence shows conclusively that it was handled in exactly the same way.

While there was evidence tending to show that all collateral other than that held by defendant for Thatcher was held and managed the same way, the only evidence with respect to the collateral held by defendant for Thatcher was of Streeter, who was cashier of the Ames State Bank during 1886, and part of 1887, and thereafter its vice-president, and he testified as follows:

"Q. What arrangements did the Ames State Bank have with the American National as to taking up this collateral that was first deposited with it, and placing other collateral in its stead?

"A. I don't think there was any conversation held about the matter by myself for the bank; whenever I wanted notes, I asked for them and received them."

Later on the following occurred:

"Q. You said there was no express agreement that you knew of between the Ames State Bank and the American National Bank for the substitution of this collateral it held for Mr. Thatcher? A. Yes, sir.

"Q. Wouldn't you consider the numerous letters that you wrote to that bank sending collateral to them, and asking for the return of other collateral an agreement to that effect? A. No, sir; I should regard it as a request."

It thus seems clear that there was no agreement or understanding with respect to this collateral by which it was to be sent back to the Ames State Bank when it became due, to be replaced with other collateral from the Ames State Bank of about the same amount, and such agreement can not be presumed from the testimony. Nor does it appear from the evidence that the withdrawn collaterals were replaced with others of about the same amount.

It is next insisted that defendant's third declaration of law is erroneous because it assumes that Thatcher knew that there was an arrangement between the Ames State Bank, and the defendant bank by which the notes were to be surrendered, from time to time, as they fell due and were replaced with others of about the same amount, when there was no such an arrangement. As we have already said there was no evidence of any such an arrangement and for that reason there was no evidence upon which to bottom the instruction. But defendant claims that there was no evidence that Thatcher accepted or assented to the receipt prior to the surrender of the collateral by the American National Bank; that the certificates of Thatcher for which it is alleged in the petition this collateral was security, were delivered to him in 1886 and 1887, more than a year before the receipt of August 21, 1888, was issued, and the collateral mentioned in it was received by the defendant; and that there is no evidence to show that Thatcher knew that the American National Bank had any collateral prior to his letter of March 3, 1890, to the Ames State Bank.

The evidence was indefinite as to the time when the receipt by defendant for the collateral for Charles Thatcher came into his possession, but some time prior to March 3, 1890. On that day he wrote the Ames State Bank a note in which he referred to collateral deposited by that bank in the American National Bank, and Union Investment Company for him. And his son testified that he saw the receipt in his

father's possession some time prior to his death which occurred in September, 1890. By the third of March, 1890, all the collateral mentioned in the petition had been surrendered to the Ames State Bank except three notes, which C. W. Thatcher, as administrator, afterwards received.

On January 29, 1890, the Union Investment Company wrote to the Ames State Bank: "The American National Bank will refuse to deliver any more of the notes until the collateral is all replaced, as Thatcher has their receipt, and they are responsible to him." So in a letter bearing date March 17, 1890, defendant's cashier wrote to Charles Thatcher: "At the request of the Ames State Bank, we send you herewith a memorandum of guaranty from the Union Investment Company to this bank, for collateral notes which we hold in trust for you."

The receipt being for the benefit of Thatcher, and having been in his possession before his death, and found among his papers thereafter by his administrator, the presumption must be indulged that it was delivered to him by the American National Bank, within a reasonable time after it was received by the bank, as that would have been in accordance with the usual and orderly course of business with respect to such matters. [Breckinridge v. American Central Ins. Co., 87 Mo. 62.]

When the American National Bank received the collateral described in the petition for Charles Thatcher, it became the trustee of an executed trust, that is, to hold the notes, described in the receipt of August 21, 1888, as collateral to the certificates of deposit described in the petition, and it could not thereafter ignore or repudiate the trust.

That all collateral held by the defendant bank for Charles Thatcher, were held in trust for him is manifest from the letter of Rieger, its cashier, to him of date March 17, 1890, in which he says in speaking of collateral notes held by defendant bank for Thatcher, "which we hold in trust for you."

These collateral being held in trust could not be lawfully diverted from the purpose for which it was held, without the consent of Thatcher, and it makes no difference that he might have and did in fact from time to time surrender collateral to the Ames State Bank, and receive from it other collateral in lieu thereof, as in the one instance he was handling his own property, while in the other the defendant was handling a trust fund, which it could not use, or permit to be used for any other purpose, than that for which it held it in trust.

There was, we think, no evidence tending to show that either W. P. Rice or the Union Investment Company was the agent of Thatcher for the purpose of directing the handling by the defendant bank of the collateral mentioned in the petition.    In fact the evidence adduced showed to the contrary and that Rice had no authority to direct the handling by the defendant of the collateral, and that he did not in fact do so. The testimony was to the same effect with respect to the Union Investment Company.    It had nothing whatever to do with the handling of the collateral held by defendant bank.  So that the defendant's fourth declaration of law was not warranted by the evidence.

It follows that all of the declarations of law asked by defendant should have been refused, and all of those asked by plaintiff, except the first, given.

For these reasons we reverse the judgment and remand the cause.

GANTT, P. J., and SHERWOOD, J., concur.