# H. P. LINDERMAN et al., Respondents, v. CHARLES L. CARMIN, Administrator, Appellant.

**Springfield Court of Appeals, April 11, 1910.**

1. **CONTRACTS: Loans: Gifts: Evidence Sufficient to Establish Loan.** In a claim filed against the estate of their son-in-law for a loan alleged to have been made to him for his expenses to California after the corpse of his wife, the only direct evidence on the matter was the testimony of plaintiffs' daughter which was to the effect that the money was "advanced" by the plaintiffs to their son-in-law. There was other evidence tending to show that the money was not intended as a loan, but was a voluntary contribution on the part of the plaintiffs, made for the purpose of having the body of their daughter brought home. A letter subsequently written by one of the plaintiffs to the son-in-law called the latter's attention to the fact that they had paid his expenses to California. *Held*, that there was evidence tending to establish plaintiffs' claim, and that the jury's verdict in their favor should not be disturbed. GRAY, J., dissents and is of the opinion that the judgment is not supported by substantial evidence.

2. **APPELLATE PRACTICE: Evidence.** Appellate courts do not weigh evidence, and should never set aside the verdict of a jury where it is supported by substantial testimony, or where the facts bearing on the issues are disputed or undisputed, but admit of different conclusions or inferences upon which reasonable minds might differ.

3. **PRACTICE: Evidence: Duty of Court and Jury With Reference to Testimony.** A court may determine what is substantial testimony, but, when that is done, the court has exhausted its power and the duty of weighing the evidence belongs exclusively to the jury.

4. **CONTRACTS: Definition of "Advance."** The term "advance," when used in a contract, usually means money furnished with an expectation that it shall be returned, but it may be used so as to mean a gift.

5. **EVIDENCE: Conclusions of Witnesses: Practice.** It is not proper for a witness to give her conclusions as to a conversation between other parties, and she may be required to give the language used by the parties, but when no objection is made to such testimony, it goes to the jury as competent evidence from which they may draw the strongest reasonable inference in favor of the party for whom it was offered.

6. ————: **Admissions: Presumption as to Declarations Against Interest.** Declarations of a party against his interest are presumed to be true because against his interest, but this presumption is not a conclusive one and the court cannot tell the jury how much weight they must give to either the acts or the declarations of a party that may be in conflict with his position at the trial.

7. ————: ————: **Province of Jury.** Where a presumption is one of fact merely, the court is not warranted in declaring it to the jury as a presumption authoritatively raised by law, but should direct them that from the evidence it is their province to determine whether they will raise the presumption or not.

Appeal from Greene Circuit Court.—*Hon. Alfred Page,* Judge.

AFFIRMED (*and certified to Supreme Court*).

*Patterson & Patterson* for appellant.

When plaintiff's own evidence demonstrates that the alleged fact on which he predicates his right to recover cannot exist, it cannot be said that the testimony of one of the witnesses that such fact does exist is any substantial evidence thereof. DeMaet v. Moving Co., 121 Mo. App. 92; Phippin v. Railroad, 196 Mo. 343; Champagne v. Hamey, 189 Mo. 726; Stafford v. Adams, 113 Mo. App. 717; Sanguenet y. Railroad, 196 Mo. 466; Mexico v. Jones, 27 Mo. App. 534; Morrow v. Car Co., 98 Mo. App. 351.

*A. F. Drake, Hamlin & Seawell* for respondents.

(1) There was an implied promise on the part of Carmin to repay the money advanced him by respondents. Moore v. Renick, 95 Mo. App. 202. (2) The question as to what the understanding was between the parties was submitted to the jury and passed upon by it. A promise or contract need not be evidenced by precise words, or any particular formula of expression. Stobie v. Earp, 110 Mo. App. 73. (3) It was

the legal duty of Carmin to pay all the expenses of burying his wife.  8 A. and E. Ency. of Law, 838; Matter of Weringer, 100 Cal. 345; Patterson v. Patterson, 59 N. Y. 574, 17 Am. Rep. 384; Jenkins v. Tucker, 1 H. Bl., 90; Ambrose v. Harrison, 10 C. B. 776; Seybold v. Morgan, 43 Ill. App. 39; Santer v. Scrutchfield, 28 Mo. App. 156.

COX, J.—This law suit originated in the probate court of Greene county, in 1908.  The plaintiffs are the parents of Vernie Carmin, who was the wife of L. L. Carmin, deceased.  The defendant is the administrator of the estate of said L. L. Carmin.  The demand presented in the probate court was originally for the sum of $939, made up of five items, to-wit: "$220 for money loaned L. L. Carmin to defray traveling expenses to California; $100 to defray funeral expenses of his wife; $129 to defray undertaker's expenses for the burial of the wife of L. L. Carmin; $200 for money had and received, and $300 for money had and received."

In the probate court the plaintiffs prevailed and were allowed the claim in full.  The defendant appealed to the circuit court, and on trial before a jury, on June 28, 1909, the plaintiffs again obtained a judgment for $439, but subsequently entered a remittitur of $129, leaving the judgment stand for $310.  The cause is now here on appeal by the defendant.

On the trial in the circuit court, an instruction was given to the jury that plaintiffs were not entitled to recover on the items of $200 and $300 for money had and received, and as the remittitur was entered for the $129 sued for as additional funeral expenses, the only items before us for review are the $220 item for money advanced for traveling expenses to California, and $100 loaned to defray funeral expenses.

The facts of the case are as follows:  The deceased, L. L. Carmin, married the daughter of the plaintiffs in 1899, and they afterward moved to Kansas City, and

the old folks gave them a restaurant business. They continued in the restaurant business for about a year, when the father of the wife purchased the restaurant and gave her $500 in cash therefor. After this, the parties had no permanent home, but lived a part of the time with the plaintiffs at Sheffield. The daughter, Vernie, left her husband in 1906 and was last heard from at Sulphur Springs in September, 1906, from which place she wrote a card to her folks, stating she would write again in a few days. The next heard of her was in November, 1907, when her parents saw in a newspaper that she had been killed in California. Upon the receipt of this information, her father wired her husband to come to Kansas City. He immediately went to Kansas City, and there was a conversation between him and his father-in-law in regard to going to California after the remains. As a result of this conversation $220 was furnished to Carmin by Linderman, and he went to California.

The next heard of him was a telegram asking for an additional $100. The amount was wired to him. When he returned, he brought for burial the body of his wife, and returned to his father-in-law $10, being the amount he had left unexpended. The father made arrangements for the burial and paid, a few days after the burial, the expenses thereof, amounting to $129.

In order to determine the merits of this controversy, it is necessary for a further understanding of some other financial transactions between the parties. When the wife left the husband in 1906, he made some bitter complaint to her parents to the effect that she had taken his money and property (although it is practically conceded he had none), and he was threatening to put her picture in the newspapers and advertise for her. In order to save this threatened humiliation, a written contract was entered into between the parents and the husband by the terms of which they agreed to give, and did give, him a note for $1000, due in a year,

conditioned that the same should be null and void in case the husband and wife became reconciled within the period, and also the note was accepted by the husband as a full and complete settlement of all property disputes between him and his wife and her parents, and it was further agreed that all property and effects belonging to the wife should be turned over to the parents as security for the note and the husband relinquishing to his wife all of his right, title, interest and claim in and to the property.

The husband, after securing this note and contract, did not turn over to the parents any of the property in his possession, belonging to his wife. After his return from California, he represented to the old folks that if they would take up the old contract and give him the one thousand dollars he would see to his wife's property in California, take care of it for them, and also ship her things to them as soon as he got to Springfield, whereupon they executed to him three notes, one for $300, two for $250 each, and gave him $200 in cash, to take up the $1000 note. They afterwards paid the $300 note, and two items of the account presented in the probate court were to recover the $200 cash, and the $300 paid in taking up the $300 note. After getting this money and notes, the son-in-law again absolutely failed to carry out his part of the contract. These items, however, were taken out by the court below, and are not now before us.

The defendant offered in evidence a letter written by his mother-in-law, Mrs. Linderman, on January 11, 1908, from which we gather that the husband, in violation of the contract upon which he obtained the $200 in cash and three notes, made a claim to the property of his wife, and in this letter the mother-in-law says:

Linderman et al. v. Carmin.

"Sheffield, Mo., Jan. 11, 1908.

"Mr. L. L. Carmin.

"Dear Sir: Lu, we were surprised when we got the letter from Mr. Barnett. We trusted you to go out there and paid every cent for you, never thinking that you would swear to the statement you did. Now this compels us to make oath as to where Vernie got the money. Her pa paid her five hundred dollars for the restaurant, and the other she made by hard work in the restaurant. Her pa was with her when she went to the New England Bank here in K. C., the morning of the 27th of Sept. 1905, and had the money changed for the thousand dollar bill, which you made oath on the witness stand that she stole from you, and that it came from your mother's estate. Lu, how could you have sworn to such a falsehood. Vernie told me, and you did too, that she gave you the money to keep for her while in Hot Springs she was going out somewhere, and you never would give it back to her, and, of course, as it never was yours, only in your trust, you should have given it back to her without her having to take it. Now as we are paying you the thousand dollars and you are out nothing, not even a meal while you was out in California, you never told the people out there that we was paying all of your expenses for you. We are so sorry that we ever had you go there, but we trusted you and thought you would do what was right, but found we was deceived by you. I don't know what kind of a turn this will make in California, but we are duty bound as parents to Vernie to protect her now in regards to how she came by the money. The poor child's life has been a failure. But I pray to the God above who knows all things that the poor little thing's spirit is now at rest, and now, Lu, I will close, hoping to hear from you at an early date, and you will send me all of her things as you promised.

"Very respectfully,

"Mrs. H. P. Linderman."

The only error assigned is the refusal of the court to sustain a demurrer to the testimony.

Appellate courts do not weigh evidence and should never set aside the verdict of a jury where it is supported by substantial testimony, or where the facts bearing on the issues are disputed or undisputed, but admit of different conclusions or inferences upon which reasonable minds might differ. [Williamson v. The Transit Co., 202 Mo. 345, 100 S. W. 1072; Vincent v. Means, 207 Mo. l. c. 713, 106 S. W. 8.]

A court may determine what is substantial testimony, Stafford v. Adams, 113 Mo. App. 717, 88 S. W. 1130, but when that is done the court has exhausted its power and the duty of weighing the evidence belongs exclusively to the jury.

In support of this verdict the respondent has the right to every reasonable inference which may be drawn from the evidence. [Wilson v. Board of Education, 63 Mo. l. c. 140; Heether v. Huntsville, 121 Mo. App. 495, 97 S. W. 239.] The appellate court usurps its power when it attempts to substitute its own judgment for that of the jury, as the law that gives the court the right to declare the law gives the jury the right to find the facts. [Levels v. The Railroad, 197 Mo. l. c. 617, 94 S. W. 275.]

The only items to be considered on this appeal are $220 furnished Carmin before he started to California, and $100 wired to him after he reached there. Was there substantial evidence in this case to support the verdict for these two items? The testimony on which plaintiff relies is as follows:

Stell Linderman, a daughter of plaintiffs, testified in relation to what transpired between her father and Carmin at the time the $220 was furnished, and this was all the direct testimony in relation to that matter. Her testimony on that question is as follows: "Q. Did you hear any conversation between Mr. Carmin and your father in regard to going to California? A. Yes,

sir. Q. Tell the jury what he said. A. He said he wanted to go to California, but wasn't able to go. Said he didn't have the means to go on, and my father advanced him the money. Q. How much money? A. $200." Then follows testimony to the effect that her father, afterwards, on receiving a telegram from Carmin, wired $100 to him. On cross-examination we find this testimony. "Q. Did your father wire for him to come to Kansas City? A. Yes, sir. Q. Told him that Vernie, your sister, had been killed? A. Told him it was in the paper. Q. And asked, him to go to California? A. My father intended to go and Mr. Carmin said he knew he could identify the body better and wanted to go. Wanted to know if my papa and mamma would not advance the money? Q. They advanced the money? A. Yes, sir, they advanced the money for him to go on."

We note first that this witness does not give the language of the parties, but only her conclusions from it. This was permitted without objection and the attorney for the defendant, in the cross-examination, led her to repeat her testimony in practically the same language. Now, if we take the language used by the witness and give it the interpretation most favorable to plaintiff, what does it mean? She testified that her father advanced to Carmin $220. This term *advance*, when used in a contract, usually means money furnished with an expectation that it shall be returned. [Hartjo v. Collins, 46 Pa. St. 268; Balderston v. National Rubber Co., 27 Atl. 507; Gottleib v. Burkhardt, 97 U. S. 110.]

Webster's definition carries the same idea. Abbott's Law Dictionary defines it as follows: "To furnish value before it becomes due, or in aid of an enterprise from which a return is expected." If this language had occurred in a written contract wherein one party had agreed to advance money to another and the court were called upon to construe it, there can be no question

Linderman et al. v. Carmin.

that it would be held to mean that the money was to be repaid, and it could not be construed to mean a gift, unless it was expressly so stated. Such language might be used in connection with a gift. It does not necessarily mean that money advanced must, under all circumstances, be returned; yet, that is the sense in which it is most commonly used. Had an objection been made and the witness been required to give the language used by the parties, such language might have shown a clear understanding that the money was to be repaid, or it might have shown it to have been a gift; but having permitted the witness to testify to her own conclusion of the matter, the defendant must now be held to have waived his right to require a detailed statement of the conversation and the jury must be permitted to draw from the testimony, as given, the strongest reasonable inference in plaintiffs' favor which the testimony will bear.

If this testimony, above quoted, had been all the evidence in the case, we have no hesitancy in saying that it would support the verdict.

The defendant contends, however, that the subsequent conduct of plaintiffs, in signing notes and paying money to Carmin, and the letter written by Mrs. Linderman, are inconsistent with the claim that Carmin was, at that time, indebted to them, and raises the presumption that no such debt as now claimed by them existed and for that reason the demurrer to the testimony should have been sustained. This contention is not sound. To so hold would be for the court to say that these facts rebutted and overthrew the testimony of Stell Linderman, which tended to show that the money was furnished with the understanding that it should be returned and to do that would place the court in the position of weighing the testimony which it cannot do. Declarations of a party against his interest are presumed to be true because against his interest, but this presumption is not a conclusive one,

and the court cannot tell the jury how much weight they must give to either the acts or the declarations of a party that may be in conflict with his position at the trial. The jury must weigh the testimony even though it all comes from one side and be uncontradicted. [Seehorn v. Bank, 148 Mo. 256, 49 S. W. 886; Bank v. Hammond, 124 Mo. App. 177, 101 S. W. 677.] It would be a subversion of this rule to hold that when the evidence offered by one party was in some particulars contradictory that the court could then declare the effect of the contradiction, and, in that way, take from the jury their power to weigh the testimony as a whole.

Such testimony could not do more than raise a presumption of fact; that is, the jury might presume from these facts that Carmin was not indebted to them, or said debt would have been settled at that time, but whether such presumption should follow or not was as much the province of the jury to determine as it was the province of the jury to weigh any other testimony in the case.

In Ham v. Barrett, 28 Mo. 388, this language is used: "Where a presumption is one of fact merely the court is not warranted in declaring it to the jury as a presumption authoritatively raised by law, but should direct them that from the evidence it is their province to determine whether they will raise the presumption or not, . . . . where the facts are before the jury the presumption or inference they warrant are questions purely for them." This case has been followed and approved in Sowders v. Railroads, 127 Mo. App. l. c. 124, 104 S. W. 1122; Morton v. Heidorn, 135 Mo. l. c. 617, 37 S. W. 504; Bluedorn v. Railroad, 121 Mo. l. c. 270, 25 S. W. 943, and has never been criticised or overruled for the very substantial reason that the principle therein announced is absolutely sound and must remain the law as long as the right of trial by jury is to be preserved. And while this is a claim against an estate we know of no reason why it should not be

determined by the same legal principles applicable to other cases.

If we are right in holding that the testimony of Stell Linderman, daughter of plaintiffs, as to what took place at the time the money was furnished to Carmin, would warrant the jury in finding that the parties understood at the time that it was to be repaid, then the court would not be warranted in telling them that the presumption of fact which they might or might not raise, in their discretion, from the subsequent acts of the plaintiffs as above detailed, had so completely rebutted and overthrown the direct testimony of this witness that the jury must disregard it; yet this is, in effect, what the court would have done had it given the peremptory instruction as asked by defendant.

Much stress is laid upon the fact that when Carmin returned from California he gave back to Mr. Linderman $10 of the money which he had furnished. We do not think this fact is entitled to any great weight for the reason that the repayment of $10 at that time was in no way inconsistent with the finding of the jury that at the time the money was furnished, the parties understood that it should be repaid, for if Mr. Linderman had furnished to Carmin the money to pay his expenses to California, either as a gift or as a loan, the return of such portion of the money as was not needed for the trip would be to our mind as consistent with one theory as with the other. The weight to be given to this circumstance, as with the other testimony, was purely a question for the jury and not for the court.

Our conclusion is that there was sufficient testimony to take the case to the jury, and as this is the only error complained of, the judgment will be affirmed. *Nixon, P. J.,* concurs. *Gray, J.,* dissents, and maintains that the opinion of the majority does not follow the rule declared by the Supreme Court in State ex rel. v. Elliott, 157 Mo. l. c. 618; Knorpp v. Wagner, 195 Mo. 662,

142 App—34

and by the Court of Appeals in Comstock v. Flower, 109 Mo. App. 275; Holt v. Morton, 53 Mo. App. 187, and Young v. Van Natta, 113 Mo. App. 550, and asks that the case be certified to the Supreme Court for decision. It is so ordered.

GRAY, J. (dissenting).—I am unable to concur in the opinion of the court in this case, to the effect that the judgment of the trial court is supported by substantial evidence.

The defense is that the money was not borrowed, but was furnished by plaintiffs to be used by Carmin for the expenses of his trip to California after the body of the wife and daughter, and the sole question for decision is: Did the parties intend at the time the money was furnished, that it was a loan to be repaid? I am of the opinion that the record contains no substantial evidence supporting the loan theory.

There is not a single disputed fact in the case. The husband and wife had separated, and he had released all claims to her property. She died in California and her parents seeing the notice in the paper of her death, intended to go after the body and bring it home for burial. They wired the son-in-law to come to Kansas City, and there they talked over the proposed trip, and it was agreed that Carmin should go, and the parents advanced or furnished him the expenses of the trip. When he returned, the parents received the body and buried it, and he accounted to them for the expenses of his trip and returned the balance of the unexpended money. We find that afterwards they settled the note he held by paying $200 in cash, and executing notes aggregating $800, coming due at different times, and one of these amounting to $300 and interest was subsequently paid. After the payment of this note, the letter copied in opinion of Judge Cox, was sent to Carmin, and in that we find that plaintiffs were reminding Carmin that they had paid every cent of his expenses to

California, and that he was not out even the price of one meal on that trip, and also censuring him for not telling the people in California that the plaintiffs were bearing all the expenses of the trip. The letter reads: "We trusted you to go out there and paid every cent for you. Now as we are paying you the thousand dollars and you are out nothing, not even a meal while you was out in California, you never told the people out there that we was paying all your expenses for you. We are so sorry that we ever had you go there."

In addition to this clear language showing that it never was the intention of the parties to hold as a debt against the son-in-law the demand in this controversy, it stands admitted that at no time during his life was any such claim made.

My associates are of the opinion that inasmuch as the daughter, in her testimony relating the conversation between the plaintiffs and Carmin at Kansas City, states that the money was "advanced," that it is substantial evidence that the money was borrowed by Carmin, and that it was the intention of the parties that it should be repaid.

The word "advanced" may be used to convey different ideas and in creating different relations. The wholesale house may advance money to its traveling salesmen as expense money; again, a man may send another out to buy property for him, and advance the money therefor; a parent may advance money to a child, and if the word is used in the transaction, it may mean an advancement to be deducted from the child's part of the parent's estate. In none of these cases is the money borrowed. The husband may advance money to the wife, and in such cases, it is considered as a gift, and not a loan.

In Chase v. Ewing, 51 Barb. (N. Y.) 597, it is held that the word "advances" in legal parlance, has a different and far broader signification than an advance-

ment by a parent to a child. It may characterize a loan or a gift or money advanced to be paid conditionally.

It may be that in a strict legal sense, "advance" does not mean gift, but a sort of a loan, and in its ordinary sense, includes both loans and gifts. [Anderson's Law Dictionary; Nolan's Executors v. Bolton, 25 Ga. 355.] And testimony is admissible to determine whether it was intended as a gift or an advancement. [Gunn v. Thurston, 130 Mo. 339, 32 S. W. 654.]

If there is any doubt as to what was meant by the word "advanced" at the time the money was furnished, that doubt was removed when the son-in-law came back from California and accounted to the plaintiffs for the money used and returned the unexpended portion thereof, and by the fact that in their subsequent financial transactions, they took no account of this money, and the clear expressions in the letter that the plaintiffs had paid all the expenses of the California trip.

"Tell me what the parties have done under a deed, and I will tell you what that deed means," is quoted approvingly by the court in Scott v. Scott, 95 Mo. 300, 8 S. W. 161. This principle has been approved many times in this State. In Union Depot Co. v. Railroad Co., 131 Mo. l. c. 305, 31 S. W. 908, Judge Brace said: "The business of a court and jury is to ascertain the meaning and intention of the parties in making an agreement, and to carry that into effect, if it is consistent with law. I know of no better mode of ascertaining this meaning than is shown if all parties acted on a particular meaning. A doctrine that has frequently received the approval of this court."

The same rule is recognized in the other appellate courts of the country. The Supreme Court of Iowa puts it in the following language: "The best evidence of how the parties understood the terms of their contract, is afforded by their acts under it." [Pratt v. Prouty, 73 N. W. 1035.] The Supreme Court of Pennsylvania: "The construction placed upon contracts by

the parties will be followed by the court, if possible."
[Gillispe v. Iseman, 59 Mo. App. 266.] The Supreme
Court of West Virginia: "In construing contracts, the
courts pay high regard to the construction given by the
parties by their actions in reference thereto." [Clark
v. Lambert, 47 S. E. 312.] In the Federal courts, the
rule is declared as follows: "There is no safer rule for
the construction of contracts, than that placed upon
them by the parties thereto, before any controversy
arises between them." [Lyman v. K. C. & A. R. Co.,
101 F. 636.]

I agree that the general rule is that the appellate
court will not weigh the evidence, but I am of the opin-
ion that where there is no conflict in the evidence and
it all comes from plaintiffs' witness and the written
admissions made by the plaintiffs, then it is the duty
of the appellate court to pass upon the testimony as
a matter of law. In this position I believe I am sus-
tained by the great weight of authority in this and
other States. [State ex rel. v. Elliott, 157 Mo. l. c.
618, 57 S. W. 1087; Knorpp v. Wagner, 195 Mo. 662,
93 S. W. 961; Comstock v. Flower, 109 Mo. App. 275,
84 S. W. 207; Holt v. Morton, 53 Mo. App. 187; Young
v. Van Natta, 113 Mo. App. 550, 88 S. W. 123; Hodge
v. Williams, 63 Pac. 721; Thomas v. Pocatello Power
& Irrigation Co., 63 Pac. 595; Brandt v. Hall, 82 N. E.
929; Commercial Bank of Moscow v. Lieuallen, 46 Pac.
1020; Talcot v. Mastin, 79 Pac. 973; Gibson v. Ham-
mang, 88 N. W. 500; Douglas v. Paine, 104 N. W. 781.]

It is claimed that my opinion is in conflict with
the rule announced in Seehorn v. Bank, 148 Mo. 256,
49 S. W. 886, cited and relied on by the majority of this
court. It is true in that case it is said the jury must
weigh the testimony, even though it all come from one
side and be uncontradicted. That was a correct dec-
laration of law applied to that class of cases. The de-
fendant had filed an answer denying all the allegations
of the petition, and the plaintiffs introduced testimony

tending to prove the allegations of his petition, and the defendant offered no testimony, and the court simply held that the defendant had the right to take the opinion of the jury as to whether they believed the testimony of the plaintiffs' witnesses. In that case the defendant was denying the truth of the witnesses. In the present case, the defendant admits the truth of the testimony of plaintiffs' witnesses, but says to the court accepting this testimony as absolutely true it does not furnish substantial evidence to support the judgment.

The letter written by Mrs. Linderman was evidence against her husband. They were jointly interested in the subject-matter of the suit, and had a joint interest in the matter in controversy. In such cases, I understand that the rule is well settled that the declaration and admissions of one are admissible against the other. [Armstrong et al. v. Farrar et al., 8 Mo. 627; Hurst & Salmon v. Robinson, 13 Mo. 82; St. L., O. H. & C. Railroad Co. v. Fowler, 142 Mo. 670, 44 S. W. 771; Wigmore on Evidence, vol. 2, sec. 1080.]

I do not believe the fact that Mrs. Carmin was the wife of Carmin, should, under the evidence, raise a presumption that he borrowed the money in order to bury her in recognition of his legal duty. More than a year previous to her death, she had deserted her husband and her relatives, and they did not know where she was, or whether she was alive. My understanding of the law is, that where the wife deserts the husband and secretes herself from him, that he is not liable for necessaries furnished her. [Reese v. Chilton, 26 Mo. 598.]

The husband was not interested in the property of the wife. Under the written contract offered in evidence, it all belonged to the plaintiffs, as by that contract he had relinquished all the claim thereto.

My associates maintain that we do not differ as to the law of the case, and that our only difference is on the one question, whether there is substantial evi-

dence to support the verdict, and that is a question of fact. We all agree that the court may determine what is substantial evidence, but in determining this question, I maintain that the opinion of the majority does not follow the rule declared by the Supreme Court in State ex rel. v. Elliott, 157 Mo., supra; Knorpp v. Wagner, supra; also Court of Appeals in Comstock v. Flower, supra; Holt v. Morton, supra, and Young v. Van Natta, supra.

In State ex rel. v. Elliott, the testimony, as here, was plain and uncontradictory, and the court said: "There is no conflict in the testimony, and therefore, the legal effect of the uncontradicted evidence is open to inquiry to this court." Page 618.

In Young v. Van Natta, supra, JOHNSON, J., delivering the opinion of the court, said: "When the terms of a contract are definitely known, whether it be in writing or verbal, its interpretation is a matter of law for the court, not a question of fact for the jury."

In Holt v. Morton, supra, the rule is declared that a verdict inconsistent with the admissions of the successful party, and the uncontradicted evidence, will not be permitted to stand.

I believe that the result reached by my brethren is due to the fact that they have not followed the rules declared in these cases, and therefore, their opinion is in conflict with said cases, and that the cause should be sent to the Supreme Court for a final disposition.

The amount involved is not large, and owing to the vast amount of work, in important cases, now pending before the Supreme Court, I regret that we are unable to agree on the final disposition of this case, but there is a principle involved, and that is, that persons should not be allowed, after a man has died, to recover on demands which they admitted, while he was alive, had no existence, and when the uncontradicted evidence shows such is attempted, it is the duty of the trial court to prevent it, and if that court fails in the discharge of

such duty, then it becomes the duty of the appellate court to interfere and prevent the wrong being accomplished.

For the reasons given, I dissent from the majority opinion and ask that the cause be transferred to the Supreme Court.