<hr />

LLOYD v. THE LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, *Appellant.*

128  595
150   54
79a 399

128    595
173   ⁵726

In Banc, May 21, 1895.

1. **Railroad**: PUBLIC WAY: TRESPASSER. A person struck on a public road or street by a passing railway train is not a trespasser.

2. ———: PUBLIC CROSSING: RINGING BELL AND SOUNDING WHISTLE: NEGLIGENCE. The failure of the servants of a railway company to ring the locomotive bell or to sound the whistle when approaching a public crossing, as required by Revised Statutes, 1889, section 2508, will warrant the jury in finding for the injured person, when it appears that obedience to the statute would have prevented the injury.

3. ———: ———: ———: ———. Where the bell is not rung nor the whistle sounded as required by the foregoing statute, and the engineer in charge of the train could, by the exercise of ordinary care, have seen the deceased in time to have prevented the accident, the case should be submitted to the jury notwithstanding the deceased may have been negligent in going upon the track.

4. ———: ———: ———: ———. The evidence examined and *held* that it was sufficient to authorize a finding of the jury that the engineer by the exercise of ordinary care could have seen the deceased in time to have avoided the injury.

5. **Practice:** INSTRUCTION: COMMENTING ON EVIDENCE. An instruction that, in determining whether the employees in charge of a train approaching a highway crossing exercised ordinary care or were guilty of negligence, the jury should take into consideration the rate of speed at which the train was running, the place of the accident, the signals or alarms given and whether the employees where at their posts and all the other facts and circumstances in evidence relative to the movement and management of the train is not objectionable as commenting on the evidence, but is a proper guide in determining what would be ordinary care or negligence under the circumstances.

*Appeal from Iron Circuit Court.*

AFFIRMED.

*Martin L. Clardy* and *Wm. S. Shirk* for appellant.

(1) The court below should have sustained defendant's demurrers to the evidence. Where the evidence, juridically considered, does not support the verdict which was rendered thereon, the appellate court will reverse a judgment rendered upon it. The evidence must not only be substantial, but credible. When it can be seen that the preponderance of the evidence against the verdict is so great as to imply gross partiality or prejudice on the part of the jury, a demurrer ought to be sustained. *Powell v. Railroad,* 76 Mo. 84; *Lenix v. Railroad,* 76 Mo. 80; *Avery v. Fitzgerald,* 94 Mo. 207; *Spohn v. Railroad,* 87 Mo. 74; *Garrett v. Greenwell,* 92 Mo. 120; *Mauerman v. Railroad,* 41 Mo. App. 348; *Henderson v. Railroad,* 36 Mo. App. 109; *Commissioners v. Clark,* 94 U. S. 284. (2) Every reasonable intendment in favor of plaintiff, which the jury, with any degree of propriety, might have drawn from the evidence, may be indulged, and then it is apparent she has no cause of action. The deceased's view in the direction of the approaching train was unobstructed. It was his duty to look and

listen for the train before attempting to cross the track. A person going upon a railroad track is bound, first, to use his senses of sight and hearing to ascertain whether a train is approaching. *Zimmerman v Railroad*, 71 Mo. 476; *Powell v. Railroad*, 76 Mo. 80; *Purl v. Railroad*, 72 Mo. 168; *Turner v. Railroad*, 74 Mo. 603; *Henze v. Railroad*, 71 Mo. 636; *Fletcher v. Railroad*, 64 Mo. 484; *Harlan v. Railroad*, 64 Mo. 480; *Kelley v. Railroad*, 75 Mo. 138; *Dlauhi v. Railroad*, 105 Mo. 645; *Lenix v. Railroad*, 76 Mo. 86; Elliott on Roads and Streets, pp. 612, 613; Beach on Contributory Negligence, sec. 181. (3) It will be conceded that plaintiff's husband was guilty of negligence in going upon the track directly in front of a moving train. In order for plaintiff to recover, it must, therefore, appear that the proximate cause of the injury was defendant's omission to use a proper degree of care to avoid injuring him after its employees became aware, or, by the exercise of ordinary care, might have become aware of deceased's perilous position. *Maher v. Railroad*, 64 Mo. 267; *Craig v. Sedalia*, 63 Mo. 417; *Guenther v. Railroad*, 108 Mo. 18; *Stanley v. Railroad*, 114 Mo. 606; *Prewitt v. Eddy*, 115 Mo. 283. (4) All the circumstances surrounding the accident should be considered, and when this is done, it is manifest that deceased went upon the track when the engine was within a few feet of the crossing, and that it could not have been stopped after his entry upon the track in time to have averted the accident. (5) The fact that the steam escaping from the engine on the main track made deceased's sense of hearing practically useless imperatively required of him frequent and diligent use of his eyesight. *Railroad v. Moseley*, 57 Fed. Rep. —. (6) Instruction number 4 ought not to have been given. It is a commentary on the evidence. In it, the jury are directed to take into consideration, among

other things, whether the employees were at their respective posts, and there is no evidence warranting such an instruction.

*John H. Raney* for respondent.

(1) The court did not err in overruling appellant's demurrer to the evidence at the close of respondent's case nor did it err in overruling appellant's demurrer to evidence offered again, at the close of the whole case, because on the case made by the evidence, according to the great weight of authority, the case was properly submitted to the jury. *Hanlon v. Railroad*, 104 Mo. 381; *Dickson v. Railroad*, 104 Mo. 491; *Kellny v. Railroad*, 101 Mo. 67; *Hilz v. Railroad*, 101 Mo. 36. (2) The failure to ring the bell or to sound the whistle alone will warrant a recovery when it appears that obedience to the requirements of the statute would have prevented the injury. *Hanlon v. Railroad*, 104 Mo. 381. (3) If the employees of the company failed to exercise reasonable care in view of the locality, circumstances and dangers to be anticipated, and if by the exercise of such reasonable care they could have avoided the injury to respondent's husband, then the company is liable in this case, notwithstanding respondent's husband may have been negligent in not looking out for the train when he went upon the track. *Hilz v. Railroad*, 101 Mo. 36. (4) The evidence is ample to support the verdict and the judgment should be affirmed.

### DIVISION TWO.

GANTT, P. J.—Andrew J. Lloyd, whose widow brings this suit, was run over and killed by defendant's train on a public crossing on the side, or passing track

at Des Arc, Iron county, Missouri, about 4 o'clock in the afternoon of the twenty-ninth day of September, 1891.

A north bound local freight train had arrived and stopped at the station, which is located on the east side of the main track, just before the south bound train, and had possession of the main track, and obstructed the public road or street which crossed the tracks north of the station house, or depot. Andrew J. Lloyd was quite an old man. He had been married to plaintiff for thirty-three years. On the afternoon of the twenty-ninth of September, 1891, the deceased and E. C. Gray met near the crossing north of the depot and spoke a few words, and as they were talking walked on the side track, turning their faces in a southern or southeastern direction. They were prevented by the north bound train from crossing to the depot which they were endeavoring to reach in order to take the north bound train. They stopped between the rails on the side track and stood there a minute and a half or two minutes.

Gray testified that the deceased came to him on the public crossing and they were six or eight feet from the track when they first spoke. He was asked if at that time he saw anything of the south bound train which killed Lloyd, and answered, "I had looked just at that time north for the south bound train, thinking she was on the track and I saw the engine north of the crossing, I thought about the length of four or five rails, and I thought the engine was still. That was my judgment at the time, that the engine was still, and I turned just at that time to start and he (Lloyd) spoke to me. It wasn't only a thought from the time I looked at the engine and thought it was still until he spoke to me and we spoke a few words and I went on the crossing. We stopped on the crossing. The engine was

some distance from us when we walked on, and there was nothing only us two men on the track. The north bound train cut me off from the depot; that was the occasion of my stopping. Lloyd was asking me to grind some corn for him at my mill. As we stood on the track Mr. Lloyd said, 'Mr. Lowe can or Mr. Lowe will' and just then I felt the jar of the plank on which I stood, and I looked and 'hollered,' and jumped off the track. The engine struck Mr. Lloyd and dragged him about fifty feet." This witness also testified that he looked in the cab of the engine and the engineer was not on the right side of it.

Andrew Ruble, another witness, testified that he crossed the tracks to the depot and Lloyd and Gray were standing on the crossing talking and the train that killed Lloyd was about thirty or forty yards from them.

Isaac Stamp, another witness, who was three hundred or three hundred and fifty feet south of the crossing and fifty feet west of the track, was trying to discover for Mr. Staab whether the train which killed Lloyd was the local freight by the number of the engine, saw Lloyd and Gray on the track between the rails when the engine which killed Lloyd was six or eight rods away from them. The train was running three or four miles an hour. He heard no whistle or bell ringing. He saw the train catch Lloyd and kill him.

Jacob Staab says that when he stopped at the store and asked Mr. Stamp if that was the local freight going south, that he noticed Lloyd and Gray standing on the track and that the train that killed Lloyd was at that time, according to his judgment, one hundred or maybe one hundred and fifty yards below the crossing and that distance away from Lloyd and Gray. Lloyd and Gray were standing on the track when Staab first saw

them; he didn't know when they came upon the track; they did not move off the track. "I don't think they ever moved until the train moved them, to the best of my knowledge."

The engineer saw these two men walking upon the crossing, near the track, when he was away down the side track, and one hundred yards or more north of the crossing. He did not see them when the engine struck them and did not know it until he was told by his fireman that he had killed a man. The engineer, fireman and brakesman testified that the engineer was at his post.

There was evidence that the grade at this point was upward nine inches to the one hundred and eighty feet, or about twenty or twenty-one feet to the mile. The train contained fifteen cars and a caboose and was moving from three and a half to four miles an hour and there was evidence that it could have been stopped under these circumstances in thirty feet.

All of plaintiff's witnesses testified that the train gave no signals for the crossing or that they heard none, and would have heard them, if there had been any, as they were within one hundred to three hundred and fifty feet of the crossing. The defendant's witnesses in charge of the train testified they heard the whistle and bell.

The defendant demurred to the evidence both at the close of plaintiff's case and after all the evidence was in, both of which demurrers were overruled. The court then gave the following instructions:

"1. If you believe from the evidence that Andrew Lloyd, the husband of the plaintiff, was, on the twenty-ninth day of September, 1891, at Iron county, Missouri, struck by one of defendant's trains on its railroad and killed, and if you further find that the train that struck deceased could have been stopped by the em-

ployees of defendant in charge of the train by the exercise of ordinary care on their part in time to have prevented his injury after said employees became aware, or might have become aware (by the exercise of ordinary care) of said Lloyd's imminent peril of being struck by said train, then your verdict should be for the plaintiff.

"2.   If you should find a verdict for the plaintiff, the amount of such verdict should be for the sum of five thousand dollars.

"3.   The burden of proof in the case is upon the plaintiff, and unless she has proven her case by a preponderance of the evidence your verdict should be for defendant.

"4.   In determining the question whether the employees of the defendant exercised ordinary care or whether they were guilty of negligence, you should take into consideration the rate of speed at which the train was running which struck deceased, the place where the accident happened, the signals or alarms which were given, if any, and whether the employees were at their respective posts, and all the other facts and circumstances in evidence before you in relation to the movement and management of said train.

"5.   If you believe from the evidence that the employees of defendant in charge of train which struck Lloyd saw said Lloyd approaching the track, yet the court instructs you that they had the right to presume that he would not attempt to cross in front of a moving train, and they had the right to proceed to the place where the accident happened without abating the speed of the train.

"6.   It was the duty of the said Andrew Lloyd to look and listen for approaching trains before going upon the track of the defendant's railroad, and if you find from the evidence that he stepped upon the track

of defendant's railroad just before the accident, and in front of a train approaching thereon from the north, and that he could have seen or heard said train if he had looked or listened, and that he went upon the track without looking or listening for the train and was struck by it, then your verdict should be for the defendant; unless, however, you should further find from the evidence that said train could have been stopped by employees of the defendant in charge of said train by the exercise of ordinary care and prudence, in time to have prevented the injury, after they became aware, or might have been aware (by the exercise of care) of the peril of said deceased on said railroad track.

"7. You are further instructed that the term 'ordinary care,' as mentioned in these instructions depends on the facts of each particular case or situation in reference to which the term is used, and it is such care as a person of ordinary prudence and caution would usually exercise under the same circumstances.

"8. The court instructs the jury that, although they may find from the evidence that no whistle was sounded or bell rung by defendant's employees in approaching the public crossing on which said Andy Lloyd was struck, still that fact does not entitle plaintiff to recover, for it was the duty of said Andy Lloyd, before going upon the track of said railroad, to look and to listen for an approaching train; and if, by looking, you believe he could have seen, or, by listening, he could have heard, the same, then he was guilty of negligence that prevents his recovery, and your verdict should be for the defendant; unless you further find that defendant's employees discovered his presence on the track and his peril, or, by the exercise of ordinary care, might have so discovered his perilous position in time to have stopped the train and averted all injury to him."

To the giving of instructions numbered 1, 2, 4, 6, 7, and 8 by the court of its own motion, the defendant then and there duly excepted.

And the court refused to give the following instruction, asked by defendant:

"3. The jury are informed that the law did not require defendant's employees in charge of said train to ring the bell at a distance of eighty rods from the public crossing and keep ringing it at intervals until it had crossed said road, and to sound a steam whistle at least eighty rods from said crossing at intervals until said train had crossed said public road, but it is sufficient if either the bell was rung or the whistle sounded at the distance named and at intervals before crossing said public road."

To which action of the court in refusing to give said instruction, defendant objected and excepted at the time.

On the twenty-seventh of October, 1892, the jury returned a verdict for plaintiff for $5,000, and within four days after said verdict was rendered, to wit, on the twenty-seventh day of October, 1892, defendant filed his motions for a new trial and in arrest, which were overruled and exceptions saved.

I. The court instructed the jury on the theory that the evidence clearly made out a case of negligence on the part of the deceased Andrew Lloyd, in going upon a railroad and standing between the rails when, by looking, he could have seen a train on that track one hundred and fifty feet, or less, distant from him, and moving toward him. So regarding the testimony the court declared the law to be that deceased was guilty of such contributory negligence that would prevent a recovery by his widow, unless the jury should further find that defendant's employees discovered his presence on the track and his peril, or, by the exercise

of ordinary care might have so discovered his perilous position, in time to have stopped the train, and averted the injury to him. This principle of law is incorporated in the first, sixth and eighth instructions and in the seventh, "ordinary care" is defined correctly to be "such care as a person of ordinary prudence and caution would usually exercise under the same circumstances."

In the fourth instruction the jury were told that, in determining the question whether the employees of the defendant exercised ordinary care or whether they were guilty of negligence, they should take into consideration the rate of speed at which the train was running which struck the deceased, the place where the accident happened, the signals or alarms which were given, if any, and whether the employees were at their respective posts, and all the other facts and circumstances in evidence before them in relation to the movement and management of said train, and were further told in the fifth instruction that, although the employees in charge of the train saw Mr. Lloyd approaching the track, they had a right to presume he would not attempt to cross in front of a moving train, and they had a right to proceed without abating their speed.

Certainly instructions more favorable to defendant could not, consistently with the law, have been given, if there was evidence justifying the submission of the case to the jury at all. So that it is only necessary to determine whether the demurrer to the evidence should have been given at the close of the case.

There was undisputed evidence that deceased was struck and killed on a public road or street. He was not then a trespasser. He had gone to the point on the public road or street where he was killed, and his passage across the main track was blocked by the north bound train. There was evidence that Mr. Gray, who

was with him, looked north for the train that killed
Lloyd just before attempting to cross on his way to the
depot and that he thought it was standing still.    What
Mr. Lloyd thought or saw is not affirmatively shown,
but, as the evidence all shows, the train was not moving
over four miles an hour, and as Lloyd and Gray saw
only the front of the engine it can not be said as a
matter of law that they were negligent in not knowing
that it was moving.    There was much evidence that no
bell was rung or whistle blown on the train that killed
Lloyd, while the trainmen testified that the bell was
rung and whistle sounded.

Again, there was evidence that the engineer saw
the two men approaching the track when he was still
one hundred yards north of the crossing; that the train
was running from three and one half to four miles an
hour only; that it was moving up a grade of twenty-
one feet to the mile or nine inches to the one hundred
and eighty feet at this point, and there was evidence
that under these circumstances a train moving so slowly
could have been stopped in thirty feet.    Indeed, the
engineer testified that had he anticipated the accident
he could have stopped the train in two car lengths.

It is also in evidence that the engineer did not
know when the engine struck deceased.    It is in evi-
dence that the accident occurred at 4 o'clock in the
afternoon; that the track was straight and that Gray
and Lloyd stood for a minute and a half or two minutes
immediately between the rails on the public crossing;
there was nothing to obstruct the view and prevent the
engineer, if he was at his post, as he should have been
when coming into a depot or crossing a public road or
street, from seeing both Lloyd and Gray.

The steam escaping from the north bound train
doubtless prevented their hearing the south bound
train's approach.

Under these circumstances we are asked to say as a matter of law that there was no evidence of negligence on the part of the defendant's servants and trainmen in not discovering the deceased on the track in time to warn him or stop the train.

. Section 2608, Revised Statutes, 1889, requires that the bell on a locomotive engine shall be rung at a distance of at least eighty rods from the place where the railroad shall cross any traveled public road or street, and be kept ringing until it shall have crossed such road or street, or the whistle shall be sounded at least eighty rods from the place where such railroad shall cross such road or street and be sounded at intervals until it shall have crossed such road or street, and a failure to so ring the bell or sound the whistle shall make the company liable for all damages to any person who shall be injured at such traveled public road or street crossing. The failure to ring the bell or sound the whistle by the employees will, of itself, warrant the jury in finding for the injured party when it appears that obedience to the statute would have prevented the injury. *Karle v. Railroad*, 55 Mo. 482; *Zimmerman v. Railroad*, 71 Mo. 476; *Barkley v. Railroad*, 96 Mo. 367; *Hudson v. Railroad*, 101 Mo. 18; *Hanlon v. Railroad*, 104 Mo. 381; *Dahlstrom v. Railroad*, 108 Mo. 529.

Of course it was competent for defendant to show that even if the bell was not rung or the whistle blown, this failure did not produce the injury; but when it is considered that the track was straight; that it was daylight; that the train was approaching both a crossing and a station and the two men stood for a minute and a half immediately between the tracks, we think there was evidence from which the jury could have found that the engineer, by the exercise of ordinary care, could have seen them in time to have averted the injury. If he could not have stopped his train, he

could have given the danger signals by which the deceased would have been warned. There is ample evidence that he did not see the man when his engine came on him and struck him. There was also evidence that the engineer not only could have seen deceased, but there was evidence that he could have checked or stopped the engine before striking him.

All this evidence, coupled with the failure to ring the bell or sound the whistle, made it the duty of the court to submit the case to the jury, and there was no error in overruling the demurrer to the evidence, notwithstanding the negligence of the deceased in going upon the track. *Hilz v. Railroad*, 101 Mo. 36.

II. There was no error in the fourth instruction. It is not subject to the criticism of being a comment on the evidence. It was a very proper guide in determining what would be ordinary care or negligence under the facts of the case. The statute very wisely requires watchfulness on the part of trainmen in crossing public roads and streets and charges them with the duty of being on the lookout for persons using the highway.

The theory of the defendant that deceased stepped upon the track when the engine was within a few feet of the crossing and that it could not have been stopped after he did so in time to avert the injury was submitted to the jury, under proper and favorable instructions, and they have found against defendant, and there was evidence from which they were justified in so finding. The judgment is affirmed. BURGESS, J., concurs; SHERWOOD, J., dissents.

IN BANC.

PER CURIAM.—The foregoing opinion of GANTT, J., in division number two, is adopted as the opinion of the

State ex rel. v. Lay.

court in banc and in accordance therewith the judgment of the circuit court is affirmed, all the judges concurring except SHERWOOD, J., who dissents.