A. W. McCROSKY, Respondent, v. L. H. MURRAY, Appellant.

Springfield Court of Appeals, February 7, 1910.

1. **PRACTICE: Right of Defendant to have Jury Pass on Issue: Peremptory Instructions for Plaintiff.** Where an isue of fact is controverted, the burden of proof being upon the plaintiff, and when oral testimony is relied upon as proof of the truth, though the testimony given on the one side of the issue is uncontradicted, the defendant is entitled to have a jury, or a court sitting as a jury, pass upon the issue of fact, although the defendant offers no evidence whatever, and it is error for the court to peremptorily instruct a finding for plaintiff.

2. ———: **Trial by Jury.** The law is well established that however great the weight or preponderance of the evidence may be, it is for the jury to weigh and determine the credibility of the witnesses and the weight of their testimony by comparing and considering and balancing the probabilities. It is their province to determine the fact.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

REVERSED AND REMANDED.

*E. D. Merritt* for appellant.

Appellant was entitled to have the issue in this case passed upon by the jury. The court had no right, to dictate to the jury what their verdict should be. Gregory v. Chambers, 78 Mo. 298; Schroeder v. Railroad, 108 Mo. 322; Wolf v. Campbell, 110 Mo. 114; Lockwood v. Ins. Co., 47 Mo. 50.

*Perry T. Allen* for respondent.

NIXON, P. J.—This was an action commenced before a justice of the peace to recover a commission of fifty dollars which the plaintiff claimed was due him from the defendant for procuring a purchaser for real property owned by the defendant in Springfield, Missouri. The plaintiff prevailed in the justice's court and the defendant took an appeal to the circuit court, where, on trial *de novo,* the plaintiff again obtained judgment for fifty dollars. At the conclusion of the evidence in the case, the court gave the jury a peremptory instruction to find the issues for the plaintiff, and thereupon the jury returned a verdict for the plaintiff for the sum of fifty dollars, and judgment was entered thereon as stated above. The defendant has perfected his appeal to this court.

The plaintiff is a real estate dealer. At the trial, the plaintiff introduced himself as a witness and produced other evidence tending to support the issues in his behalf.

The defendant introduced himself and other witnesses in his behalf. The defendant's statement of his employment of the plaintiff is that the plaintiff came to him and said: "I think I have a prospective pur-

chaser for your lot." His testimony continues: "He asked me my price. I told him that I wanted it to net me twelve hundred dollars, and fifty would go to him if he made the sale and thirty-two dollars was figured for an abstract. He said to me, 'Will you give me two or three days in which to find out whether I can make the sale? I rather think I can.' I said 'yes.' I said 'I never put my property on the list around town with anybody, but if a man brings me a customer or a purchaser, I am always ready to pay him for his labor.' He told me he could find out in two or three days. I said 'all right,' and we parted."

The plaintiff's version of the contract was that he told the defendant that he had a prospective purchaser for the lot. His testimony continues: "They have requested me to see the least dollar in cash you would take for it. He put the price at $1,282.00. 'Now,' he says, 'Mac, if they don't want it at that price, don't multiply words with them. I will take that for it and give you fifty dollars for selling it.'"

The defendant's evidence further tended to show that on the next day, one R. H. Porter, another real estate dealer, called the defendant over the telephone and asked him to put a price on the lot as he had a prospective purchaser, which defendant refused to do, telling him that McCrosky had the right to sell the lot provided he could sell it in two or three days, and that if McCrosky failed, then he (Porter) could have a chance. The next day, Porter met the defendant and again asked him to put a price on the lot, which defendant again declined to do and refused to place it in Porter's hands for sale for the reason that McCrosky had not yet reported to him. Shortly after this, McCrosky came to the defendant, making this statement, according to defendant's testimony: "Mr. Murray, I have not made the deal. I don't know whether I can or not. I haven't done it." Defendant further states: "He also told me about the connection between the

Porters, and who Henry Porter and Mrs. Hewlitt were, and gave me to understand from his talk that on that account he couldn't make the trade; that it had to be made through R. H. Porter. It was in a conversation after this with Porter that I gave him authority to make the sale. After the last talk with McCrosky, I felt that he had released himself as he told me that the trade had to be made through Porter or the money had to come through Porter, and the next time I saw Porter I told him that I could now afford to let him attempt to make the sale. I asked him who his purchaser was and he refused to tell me, saying that his man lived at Texarkana, Arkansas."

There was evidence tending to prove that E. E. Porter of Texarkana was the brother of Mrs. Hewlitt, of Springfield, and that he was furnishing the money and making the purchase for her. It further appeared that R. H. Porter, the real estate man, was also a relation. Within a week from the time of the last conversation between R. H. Porter and the defendant, Porter reported that he had sold the lot. A deed of conveyance was executed by the defendant to E. E. Porter, who paid the purchase money to him. E. E. Porter afterwards conveyed the property by deed of gift to his sister, Mrs. Hewlitt. The evidence also tended to show that the defendant was not informed prior to the day that he made the deed to E. E. Porter what the purchaser intended to do with the lot after purchasing it. The defendant paid the commission for making the sale to R. H. Porter. There is some contradiction between plaintiff and defendant as to the terms of the original contract, and also as to what statements Mrs. Hewlitt made to the plaintiff as to R. H. Porter's connection with the sale. It is unnecessary further to set out the evidence in this case in order to explain the disposition we make of the case.

The evidence for the plaintiff was entirely oral, and it will be seen that the allegations of the petition

were taken as denied by the defendant. In cases of this kind, where an issue of fact is controverted—the burden of proof being upon the plaintiff—and when oral testimony is relied upon as proof of the truth, though the testimony given on the one side of the issue is uncontradicted, the defendant is entitled to have a jury, or a court sitting as a jury, pass upon the issue of fact, although the defendant offers no evidence whatever. [Seehorn v. Bank, 148 Mo. 256, 49 S. W. 886; Bank v. Hammond, 124 Mo. App. 1. c. 181, 101 S. W. 677, and cases cited; Bank v. Redfearn (decided at this term).]

But in this case, as we have stated, there are some material contradictions as to the contract. The law is well established that however great the weight or preponderance of the evidence may be, it is for the jury to weigh and determine the credibility of the witnesses and the weight of their testimony by comparing and considering and balancing the probabilities. It is their province to determine the fact. The right of trial by jury has been hedged around by many constitutional guarantees and it is the duty of courts to preserve that right inviolable. This right was denied in this case. The judgment is therefore reversed and the cause remanded. We have refrained from commenting on the merits of this case as it is subject to retrial. *Cox, J.,* concurs. *Gray, J.,* dissents for the reason that he believes the judgment should be affirmed.