HENRY J. DAVIDSON, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, June 3, 1912.

1. RAILROADS: Accident at Crossing: Frightening Team: Failure to Give Statutory Signals: Contributory Negligence: Instructions. While plaintiff was driving a team, hitched to a buggy, on a public highway, the team became frightened at defendant's freight train, ran away and plaintiff was thrown out and injured. The accident happened near a public crossing. The evidence is examined and *held* sufficient to establish a prima facie case on the part of the plaintiff that the proximate cause of the accident was a failure on the part of defendant's servants to give the statutory signals on approaching the crossing; that the burden of proving contributory negligence was on the appellant and the instructions given, when considered as a whole, are *held* non-prejudicial to defendant.

2. ————: ————: ————: ————: ————: Sufficiency of Evidence. While plaintiff was driving a team along a public highway and just after passing over a railroad crossing, the team became frightened at a freight train and ran away, threw plaintiff out of the buggy and injured him. In an action for damages plaintiff made a prima facie showing that the proximate cause of his injury was a failure on the part of defendant's servants in charge of the train to give the statutory crossing signals. Defendant pleaded contributory negligence on the part of the plaintiff in failing to look and listen for trains as he approached the crossing. *Held*, that under the evidence this question of contributory negligence was for the jury, GRAY, J., dissents, and holds that under his construction of the testi-

Davidson v. Railroad.

mony there was no conflict between the plaintiff's testimony and that of his witnesses, as well as those of defendant's witnesses; that all agreed that the train was in plain view and could have been seen by the plaintiff at any time after it came within a quarter of a mile of the crossing.

3. **EVIDENCE: Photographs.** Although photographs were taken more than a year after the accident, they are admissible in evidence where a witness testifies that there was relatively no change in the surroundings between the date of the accident and the time the photographs were taken.

4. ————: ————: **Physical Facts.** Photographs as evidence stand on the same footing as diagrams, maps or models, and rest to some extent on the credit of the witness, and they are not unimpeachable evidence, nor do they stand on the same basis as physical facts. The weight to be given them is to be determined under the same tests as are applied to other evidence.

5. ————: **Physical Facts: Conflicting with Witness' Testimony.** The law as to the weight to be given to physical facts is fully recognized in this state, to the effect that where the established physical facts and common observation and experience conflict with the testimony of a witness, such testimony must yield and the statement of the witness does not amount to substantial evidence of the facts testified to and cannot be accepted as the basis of a verdict or judgment.

6. **JURY QUESTION: Burden of Proof: Uncontradicted Evidence.** In our state the law seems to be well established that when the allegations of a party are denied and an issue thereby raised, and such party has the burden of proof, and the evidence introduced by such party to sustain the issue on his part is oral, the issue of fact should be submitted to the jury, although the evidence is uncontradicted and unimpeached and even though the opposing party has introduced no evidence.

7. ————: ————: **Negligence: Prima Facie Case: Contributory Negligence: Uncontradicted Evidence.** In an action for damages on account of negligence, where plaintiff has made a prima facie case and under its plea of contributory negligence, the defendant has introduced testimony which is uncontradicted and unimpeached and which if true would be sufficient to overcome the prima facie case of plaintiff, yet in such case it is not the province of the trial court to direct a verdict in favor of the defendant for the question of contributory negligence and the credibility of the witnesses are for the jury. The exception to this rule is where plaintiff's own testimony or the uncontradicted evidence of his witnesses affirmatively shows that he was guilty of contributory negligence.

8. ———: ———: ———: ———: ———: Contributory Negligence: **Shown by Plaintiff's Evidence.** A party by introducing witnesses vouches for their credibility and hence the weight and credibility of such testimony is eliminated from the consideration of the jury and therefore when such party, by the uncontradicted evidence of his own witnesses makes a case for his opponent, the court may give a peremptory instruction based upon that testimony.

9. **RAILROADS: Accident at Crossing: Frightening Team: Failure to Give Statutory Signals: Escaping Steam: Evidence.** In an action against a railroad company for injuries caused by plaintiff being thrown from a buggy on account of his team becoming frightened at defendant's train and running away, the plaintiff alleged a failure on the part of defendant to give the statutory crossing signals and also that the escape of steam from defendant's engine was unusual. All the testimony relating to the latter issue was withdrawn from the jury by the plaintiff and the defendant asked the court to instruct the jury to disregard all the testimony relating to the escape of steam. *Held*, this testimony was admissible in support of plaintiff's theory, that his team was frightened and that the court did not commit error in refusing defendant's requested instruction.

10. **CONTRIBUTORY NEGLIGENCE: Sudden Danger: Degree of Care.** When a person is suddenly and without his own fault placed in a place of danger, he is not required to exercise the same degree of thoughtfulness that he is under other circumstances.

11. **JURY QUESTION: Uncontradicted Evidence: Witnesses for Both Parties Testifying to Same Fact.** When plaintiff's witnesses testify to a certain fact, and the witnesses for the defendant testified to the same fact, and there is no conflict in their testimony, there is no issue of fact to submit to the jury. GRAY, J., in dissenting opinion.

Appeal from Barton Circuit Court.—*Hon. B. G. Thurman,* Judge.

AFFIRMED.

*W. F. Evans* and *Mann, Johnson & Todd* for appellant.

(1) The court erred in refusing to sustain defendant's requested instruction in the nature of a de-

murrer to the evidence offered at the close of plaintiff's case and again at the close of all the evidence in the case. Sanquinette v. Railroad, 196 Mo. 466; Porter v. Railroad, 199 Mo. 97; Walker v. Railroad, 193 Mo. 478; Mockowick v. Railroad, 196 Mo. 568; Stotler v. Railroad, 204 Mo. 619; Gumm v. Railroad, 141 Mo. App. 306; Schaub v. Railroad, 133 Mo. App. 444; Grout v. Railroad, 125 Mo. App. 552; Holwerson v. Railroad, 157 Mo. 216; Payne v. Railroad, 136 Mo. 562; Hayden v. Railroad, 124 Mo. 567; Kelsey v. Railroad, 129 Mo. 362; Jones v. Barnard, 63 Mo. App. 501; Lien v. Railroad, 79 Mo. App. 475. (2) Plaintiff's testimony is not entitled to any probative force but it is absolutely contrary to the physical facts and under such circumstances the courts have said time and time again that a court will treat as unsaid by a witness that which in the very nature of things could not be as the witness said. Kreis v. Railroad, 148 Mo. 321; Hook v. Railroad, 162 Mo. 569; McClanahan v. Railroad, 147 Mo. App. 386; Kornfield v. Supreme Lodge, 72 Mo. App. 613; May v. Crawford, 150 Mo. 504; Morris v. Kansas City, 117 Mo. App. 298; Lange v. Railroad, 151 Mo. App. 500; Mann v. Const. Co., 151 Mo. App. 586. (3) The court erred in giving plaintiff's instruction numbered 2. Harriman v. Star, 81 Mo. App. 124; Barr v. Kansas, 105 Mo. 550; Railroad v. Stock Yards Co., 120 Mo. 559; Lanrum v. Railroad, 132 Mo. App. 717; Gibler v. Railroad, 129 Mo. App. 93; Blair v. Railroad, 31 Mo. App. 224. (4) The court erred in admitting the testimony of plaintiff repecting the escape of steam and in refusing to give defendant's instruction lettered ''E,'' seeking to withdraw all of the said testimony from the jury. Mueller v. Weitz, 56 Mo. App. 36; Gutzweiler's Admr. v. Lackman, 39 Mo. 91; Wojtylak v. Coal Co., 188 Mo. 287; Grout v. Railroad, 151 Mo. App. 330.

*Edwin L. Moore* for respondent.

(1) In considering appellant's first assignment the denial of its demurrer to the evidence, it may be profitable to examine the cases showing the theory on which plaintiff prepared this petition and tried the case. Under section 3140, requiring a signal to be given by locomotives approaching crossings, a collision is not necessary to make defendant liable; but if the omission lures a traveler into a place of danger and his animals are frightened by the train and cause injury, then the omission of the signals is the proximate cause, and the course the unmanageable animals might take is merely incidental and unimportant. Turner v. Railroad, 134 Mo. App. 397; Mitchell v. Railroad, 122 Mo. App. 60; Feeney v. Railroad, 123 Mo. App. 430; Marsh v. Railroad, 104 Mo. App. 580; Morton v. Railroad, 113 Mass. 366; Prescott v. Railroad, 113 Mass. 370; Pollock v. Railroad, 124 Mass. 158. (2) Under this statute it is held that failure of signals and injury make a prima facie case. The law presumes the failure was the proximate cause. Huckshold v. Railroad, 90 Mo. 556; McGee v. Railroad, 214 Mo. 544; McNulty v. Railroad, 203 Mo. 475; Stotler v. Railroad, 200 Mo. 137; Roberts v. Railroad, 113 Mo. App. 9. (3) And when plaintiff once makes a prima facie case, then no matter how much or what kind of evidence defendant may offer, as to his contributory negligence or anything else, and whether plaintiff contradicts it or not, he is entitled to have the jury weigh defendant's evidence, for the jury has the right to reject the whole of it if it sees proper, unless plaintiff himself shows his own contributory negligence, something out of the question here. Gannon v. Gaslight Co., 145 Mo. 516; Mowry v. Norman, 204 Mo. 191; Porter v. Stock Yards Co., 213 Mo. 380; Chinn v. Railroad, 100 Mo. App. 584; Hitt v. Hitt, 150 Mo. App. 638; Bar-

ker v. Pub. Co., 152 Mo. App. 722; Loan Co. v. Killian, 153 Mo. App. 111; Milne v. Railroad, 155 Mo. App. 473. (4) Under the foregoing authorities the petition certainly stated a cause of action and ·at the trial plaintiff sustained it with substantial evidence. That being true a demurrer to the evidence is unavailing. State v. Scott, 214 Mo. 261; Bank v. Redfearn, 141 Mo. App. 386; Aultman v. Organ, 149 Mo. App. 103. (5) Where the evidence is substantial and reasonable minds may differ about it, alleged physical facts are not allowed to break it down as a matter of law. The following cases include photographs, actual measurements, etc., and will be discussed in argument. Phelan v. Paving Co., 227 Mo. 708; Woodward v. Railroad, 152 Mo. App. 475; Goodwin v. Tel. Co., 138 S. W. 943; King v. Railroad, 143 Mo. App. 291; Davis v. Railroad, 46 Mo. App. 185. (6) Any possible omission in respondent's instruction No. 2 as to contributory negligence is fully supplied by the instructions for defendant. Even necessary elements in general instructions, such as proximate cause, etc., may thus be supplied. Asbill v. Joplin, 140 Mo. App. 259; Neale v. McKintrey, 7 Mo. 128; Prewitt v. Martin, 59 Mo. 325; Bradford v. Floyd, 80 Mo. 207; Anderson v. Railroad, 161 Mo. 427; Nephler v. Woodward, 200 Mo. 190; Deschner v. Railroad, 200 Mo. 333; Railroad v. Stewart, 201 Mo. 499; Gibler v. Association, 203 Mo. 222; Carnovski v. Transit Co., 207 Mo. 277; Flaherty v. Transit Co., 207 Mo. 318; Orcutt v. Building Co., 214 Mo. 35; Bell v. Railroad, 125 Mo. App. 668. (7) An instruction is not error for assuming an undisputed fact. Johnson v. Railroad, 77 Mo. 553; Cahill v. Railroad, 205 Mo. 407. (8) An observing but non-expert witness may testify that something is unusual. 17 Cyc. 107; Feeney v. Railroad, 123 Mo. App. 425; Phelan v. Paving Co., 227 Mo. 709; Stotler v. Railroad, 200 Mo. 127. (9) The proximate cause was the omission of the statutory signals and we may

trace back through the various incidents to this real cause of the whole calamity, this making the escape of steam merely one link in the chain, even though by itself it might not be negligent.  Nagel v. Railroad, 75 Mo. 661; Boggs v. Railroad, 18 Mo. App. 278; Morrison v. Railroad, 27 Mo. App. 434; Shell v. Railroad, 132 Mo. App. 536; Parker v. Transit Co., 108 Mo. App. 465.

NIXON, P. J.—On March 18, 1910, after sundown and about dusk, respondent was driving a team hitched to a buggy on a public highway in Jasper county where the same crossed the track of appellant's railroad, and his team became frightened at appellant's freight train and ran away, and he was permanently injured.  He instituted this suit for damages, alleging that the agents and servants of the appellant in charge of the train failed to give any statutory signals for the crossing, and also that they negligently and carelessly permitted an unusual amount of steam to escape from the engine on such highway, thereby frightening plaintiff's team.  The suit was instituted in the circuit court of Barton county, and was there tried before a jury on the eleventh day of April, 1911, resulting in a verdict in favor of the plaintiff for five thousand dollars.  A motion for a new trial was filed and overruled and the company appealed to this court.

It appears from the evidence that plaintiff was driving north on the public road which runs north and south, and that the railroad track runs southeast and northwest intersecting the public road at an acute angle.  Plaintiff was driving two ponies to a single buggy.  With him in the buggy was a young man named Shelton who was leading five head of mules belonging to plaintiff.  The plaintiff was coming from the south and the train from the southeast.  On the east side of the public road was a peach orchard.  The plaintiff with his team and the mules passed over the

railroad crossing but the animals then became frightened at the train and the team ran away and plaintiff was thrown out of the buggy and seriously injured, one of his legs having to be amputated.

The plaintiff testified that he had crossed the railroad at this crossing eight different times during the fall and winter preceding the time he was injured and that no signals were given for the crossing. He also stated that steam was escaping from the engine at the time it passed the crossing on the day of the accident. The defendant offered no testimony tending to contradict the above facts, and offered no evidence of any of its employees in charge of the train or otherwise that it gave the proper statutory signals when approaching the crossing, and therefore they may be conceded for the purposes of this appeal as being true.

The plaintiff testified at the trial that his mules were not accustomed to trains, and knowing of the public crossing, he was on the lookout for approaching trains; that he was driving about three miles an hour, in a slow trot, and that he both looked and listened for an approaching train after he passed the corner of the orchard and neither saw the train nor heard any signal. That the orchard comes to a V-shape, the point of the V being made towards the crossing by the public road on one side and the railroad on the other; that traveling on the public road, when he had passed the last tree in the orchard, the railroad track would be about twenty-five or thirty feet from him; that he could not see a train approaching the crossing from the southeast because the railroad comes up out of a valley and trains come through a dirt cut which is grown up with weeds, brush and "stuff," and that you cannot see back southeast until you get on the railroad track; that until you get within ten feet of the crossing you positively cannot see a train coming because the weeds, grass and "stuff"

will hide it from view. That it is impossible to see the railroad when you pass the last tree in the orchard going towards the crossing because of the cut and of the grass growing on the sides of the same; that you will get within ten feet of the crossing—or from two hundred and twenty to two hundred and thirty feet from the point where you pass the last tree—before you can see; that the cut is not so very deep, but that you have to get where you can look through that cut, and that the weeds and grass growing on the bank prevent you from seeing. He testified that he saw the train when he was about thirty feet from the crossing and eight or ten feet from the track, but that there was a ditch on the west side of the public road which prevented him from turning around, and that he therefore hurried his animals over the track and succeeded in getting across and about thirty feet north of the track as the engine passed and frightened his team, causing the damages aforesaid.

Appellant's principal assignment of error is that the court erred in refusing to sustain its demurrer at the close of all the evidence in the case.

As above stated, the respondent testified that he both looked and listened for an approaching train; that the statutory signals were not given, and that he did not hear the train and could not see it because the weeds and brush and "stuff" growing on the bank between him and the railroad track obstructed his view.

Section 3140, Revised Statutes 1909, provides that servants of railroad corporations in charge of its trains on approaching public crossings shall ring the bell or sound the whistle as therein provided, under a penalty, and also that such corporation for failure to comply with such statute shall be liable for all damages which any person may sustain at such crossing when such bell is not rung or such whistle is not

sounded as therein required. [Lloyd v. Railroad, 128 Mo. l. c. 607, 29 S. W. 153, 31 S. W. 110.]

It must be conceded that plaintiff's evidence made for him a prima facie case, and the burden of proving that plaintiff was guilty of negligence directly contributing to his own injury was upon the defendant.

In addition to his own testimony, the plaintiff offered the testimony of Clifton McNallie and of James T. Koonce. Mr. McNallie had lived near the crossing for many years and was living there at the time of the injury and at the time of the trial. On direct examination he testified that on account of the orchard an approaching train could not be seen until the orchard was passed. On cross-examination he testified as follows: "Q. Now, after he had cleared the orchard there would be nothing to prevent his seeing the train if he had looked in that direction? A. No. Q. So when he would be fifty feet at right angles with the railroad, and farther from the crossing, he could both hear and see the train? A. Yes, sir; that is, if he turned around and looked back he could see." This evidence was given by deposition nine months after the accident; and as to such testimony, it was open to the observation of the jury that neither party inquired of him during the taking of his testimony as to the basis of his opinion, or whether he had ever had his attention particularly called to the matters concerning which he testified, or whether he had ever observed as to the obstructions along the right of way which plaintiff claimed obstructed his view on the day of the accident. Mr. Koonce testified that he was working for Mr. McNallie at the time of the accident, but had never examined the crossing particularly until a few days before the trial; that on the day of the accident he saw the train approaching the crossing, and that the whistle was not sounded and the bell was not rung for the crossing; that a few days prior to the trial he was at the crossing, and that standing at

a point two hundred and forty-five feet from the cross-
ing and in the center of the highway a train coming
from the southeast could be seen one-half mile away,
and that he stood at that point and saw a train pass.
He stated that he was present on the day when some
photographs were taken of the crossing and the wagon
road and railroad track near the same, and that the
camera for the photographs, at the time they were
taken, was at the said two hundred and forty-five feet
point.

In behalf of the defendant six witnesses testified,
among them being the young man named Shelton who
was with plaintiff at the time of the accident and also
the photographer who took the photographs referred
to by the witness Koonce. These witnesses testified
that from a point two hundred and forty-five feet or
two hundred and fifty feet south of the crossing the
plaintiff could have seen the approaching train for al-
most one-half mile before it reached the crossing.

In addition to the testimony of these witnesses,
three photographs which were taken five days before
the trial were offered in evidence after the same had
been identified and declared to be correct by Koonce
and the photographer. These photographs corrobo-
rated the testimony of all the witnesses on this ques-
tion, except that of the plaintiff, and showed that a
person standing two hundred and forty-five feet south
of the crossing in the public road could see the bottom
of the whistling post one-fourth mile from the cross-
ing, and even the wheels of the cars of a train.

Although the photographs were taken more than
a year after the accident, they were admissible in
evidence because plaintiff testified that he had been
out to the crossing a few days before the trial and
that there was relatively no change in the surround-
ings.

These witnesses for the defendant went to exam-
ine the place of the accident at the request of the de-

fendant's claim agent, presumably for the purpose of procuring evidence to be used at the trial. Witnesses Gault, Horn and Shelton were at the scene of the accident a few days after its occurrence at defendant's request, but on the witness stand gave no evidence concerning the results of their examination of the locality at that time. The other witnesses for the defendant, as well as these witnesses, were again at the scene of the accident about a year after the accident and only a few days before the trial. At this time (just before the trial) their attention seems to have been more especially directed to a point of observation on the public road about two hundred and fifty feet away—measured south from the crossing. At or near this place the camera was placed and the photographs exhibited in evidence were taken. From this point the witnesses made observations, and they testified that they could see a train approaching from the east for one-half mile—that there were no obstructions in the way. A train was in fact photographed, as shown by the pictures introduced in evidence, one-half mile northwest of Wentworth. One of the witnesses (McIlhenny) walked down the track for one-half mile and looked back along the defendant's right of way and saw the top of a buggy at or near the crossing where plaintiff was injured, standing probably one hundred and fifty feet south of it on the public road.

As we have stated, the burden of proving contributory negligence rested upon the defendant. Why the attention of its several witnesses was not called to the conditions as to seeing the right of way or an approaching train at points other than this one point is not explained. Nor was any of these witnesses asked whether there was any brush, weeds or grass growing along the right of way as plaintiff had testified.

After these witnesses had testified and after the photographs were offered in evidence the plaintiff was not recalled for further examination or to point out any inaccuracies in the photographs.

It is contended however by appellant that the testimony of plaintiff that he looked and listened for the train and did not see it is not entitled to any probative force but is absolutely contrary to the physical facts developed in the case and should as a matter of law be declared unworthy of consideration; that the photographs presented the physical facts to the jury and that as the plaintiff's testimony is contradicted by the physical facts, the court should wholly disregard it.

The law seems to be settled that photographs duly verified are admissible in evidence as aids to the jury in arriving at an understanding of the evidence or of the situation or condition or location of objects or premises material or relevant to the issues, but they have not been held, as claimed by appellant, to be unimpeachable evidence, or as standing on the same basis as physical facts. The general rule is that photographs stand on the same footing as diagrams, maps or models and rest to some extent on the credit of the witnesses, in the same way as a map, plat or plan. In careless or inexpert hands, photographs are capable of very serious misrepresentation of the original and their value depends upon their accuracy. They must be shown by extrinsic evidence to be faithful representations of the place or subject as it existed at the time involved in the controversy. In no case has it been held that they are entitled to the same consideration as evidence as conceded physical facts, but the principle is established that they go to the jury for their consideration and that the weight to be given them is to be determined under the same tests as are applied to other evidence. [Fuller v. Robinson, 230 Mo. 22, 130 S. W. 343; Baustin v. Young, 152 Mo. l. c.

324, 53 S. W. 922; Wigmore on Evidence, 790; 2 El
liott on Evidence, sec. 1263; Beardslee v. Columbia
Twp., 41 Atl. (Pa.) 617; Higgs v. Railroad, 114 N. W.
(N. Dak.) 722, 15 L. R. A. (N. S.) 1162.

The law as to the weight to be given to physical
facts is fully recognized in this state to the effect that
where the established physical facts and common ob-
servation and experience conflict with the testimony
of a witness, such testimony must yield and the state-
ment of the witness does not amount to substantial
evidence of the facts testified to and cannot be ac-
cepted as the basis of a verdict or judgment. [Phip-
pin v. Railway, 196 Mo. l. c. 343, 93 S. W. 410; Cham-
pagne v. Hamey, 189 Mo. l. c. 726, 88 S. W. 92.]

The evidence offered in this case as to the phy-
sical facts is conflicting and hence does not bring it
within that class of cases where it is held that when
the physical facts surrounding the injury are conceded
and consequently one of two conclusions must inevita-
bly be drawn—either that the plaintiff did not look
and knowingly drove upon the railroad track and was
injured, or that he did look and saw the approaching
train and attempted to cross in front of it and was
thereby guilty of contributory negligence—and hence
recovery would in either case be barred by his con-
tributory negligence. On the contrary, the plaintiff
in this case testified that on the day of the accident,
weeds, grass and brush were growing along the. rail-
road right of way and which he claims hid from his
view the approaching train. Such objects as he testi-
fied to were easily removable and could not properly
be classed as permanent physical facts. . Hence it was
not physically impossible for plaintiff to have failed
to see the train on March 18, 1910, because of obstruc-
tions, and yet that the other witnesses a year after-
ward could see it on the public road at the point of
the orchard. As to whether the conditions existing
at the time of the accident were truly stated by plain-

tiff was to be considered by the jury in connection with his statement at the trial that he had lately been back there and could not notice any changes—that the location of things was relatively the same—and we think it was the function of the jury to determine these matters of fact in the light of all the evidence in the case, and not a question of law for the court.

In this case the plaintiff by his evidence had admittedly made a prima facie case and thereafter the trial proceeded upon the defendant's plea of contributory negligence. At the conclusion of all the evidence the defendant asked for a directed verdict on the ground that the proof was uncontradicted and unimpeached as to its affirmative defense of contributory negligence and asked the court to declare as a matter of law that it was entitled to a judgment notwithstanding the prima facie case made by the plaintiff. It is to be seen that defendant, as far as its plea of contributory negligence is concerned, occupies the logical position of a plaintiff in the proof of its affirmative defense, and yet it asked the court as a matter of law to pass upon the conclusiveness of the testimony offered upon this issue.

In considering the question thus raised, a distinction is to be recognized between a demurrer to a party's evidence and a directed verdict by the court in its favor. In order to sustain a demurrer to the evidence for failure to make out a prima facie case it is not necessary for the court to pass on the credibility of the plaintiff's witnesses; their credibility is not only assumed, but the probative facts are given every reasonable intendment in order to ascertain the plaintiff's right of recovery. But a verdict for a party peremptorily directed by the court upon evidence mainly oral in cases where the burden of proof is on such party occupies an entirely different relation to the established principles of law. It has often been held in other jurisdictions that uncontradicted oral

evidence of a party holding the burden of proof is not sufficient to command a directed verdict where the inferences to be drawn from all the circumstances are open to different conclusions by reasonable men. But in our state the law seems to be well established that when the allegations of a party are denied and an issue thereby raised, and such party has the burden of proof, and the evidence introduced by such party to sustain the issues on his part is oral, the issues of fact should be submitted to the jury, although the evidence is uncontradicted and unimpeached and even though the opposite party has introduced no evidence, because uncontradicted testimony cannot be treated as conceded facts. [Link v. Jackson, 158 Mo. App. 63, 139 S. W. 588, 596.] The jury must determine the credibility of the witnesses and the weight to be given to their testimony. It is not the province of a trial court after a plaintiff has made out a prima facie case to sustain an instruction to the jury to find for the defendant, offered at the close of all the evidence, on the ground that defendant's proof is uncontradicted and is sufficient to overcome the prima facie case which the conceded and admitted facts make for the plaintiff; nor can an appellate court hold that such an instruction under such circumstances should have been given, after a verdict for plaintiff has been sustained by the trial court, without assuming the prerogatives which under our constitution and laws belong to the jury. [Gannon v. Laclede Gas Light Co., 145 Mo. 502, 46 S. W. 968, 47 S. W. 907.]

Our attention has been called to sporadic cases in this state which have held that while contributory negligence is a matter of defense and the burden of proof as to that defense rests upon the defendant, still if it appears without any conflict of evidence from the plaintiff's own case or from the cross-examination of his witnesses *or from other undisputed evidence in the case* that the injured party was guilty of con-

tributory negligence, proximately contributing to produce the injury, the court should direct a verdict. [See Church v. Railroad, 119 Mo. 203, 23 S. W. 1056.] But there is another line of cases beginning as far back as Bryan v. Wear, 4 Mo. 106, which hold to the rule as we have stated it, that when the testimony to sustain an issue is oral and uncontradicted, the question is still one for the jury and the court cannot direct a verdict. [Vaulx v. Campbell, 8 Mo. 224; McAfee v. Ryan, 11 Mo. 364; Gregory v. Chambers, 78 Mo. 294; Wolff v. Campbell, 110 Mo. 114, 19 S. W. 622; Schroeder v. Railroad, 108 Mo. 322, 18 S. W. 1094; Mineral Land Co. v. Ross, 135 Mo. 101, 36 S. W. 216; Houston v. Tyler, 140 Mo. 252, 36 S. W. 654; Gordon v. Burris, 141 Mo. l. c. 615, 43 S. W. 642; Hunter v. Wethington, 205 Mo. 284, 103 S. W. 543; Johnson v. Grayson, 230 Mo. 380, 130 S. W. 673; Seahorn v. Bank, 148 Mo. 256, 49 S. W. 886; Hugumin v. Hinds, 97 Mo. App. 346, 71 S. W. 479; Whitson v. Bank, 105 Mo. App. 605, 80 S. W. 327; Bank v. Hammond, 124 Mo. App. 177, 101 S. W. 677; McCrosky v. Murray, 142 Mo. App. 133, 125 S. W. 226; Dyer v. Tyrrell, 142 Mo. App. 467, 127 S. W. 114; Brinkman v. Gottenstroeter, 153 Mo. App. 351, 134 S. W. 584; Link v. Jackson, supra.]

While there is some apparent conflict in the holdings in these cases and the line of cases of which Church v. Railroad, supra, is an example, we take it that the rule as we have stated it is now the settled law of this state. In Gordon v. Burris, supra, the court in commenting upon this question used the following language: "The jury, it is said, must determine the credibility of witnesses and the weight to be given to their evidence, and a court, when it undertakes to pass upon the sufficiency of such evidence to prove a given fact, usurps the province of the jury. This rule has not been uniformly recognized in this state but was declared at any early day and has been generally followed in the later decisions." This language

was quoted with approval in Dalton v. Poplar Bluff, 173 Mo. l. c. 47, 72 S. W. 1068. While the case of Gordon v. Burris (or any of the later cases) does not expressly declare that the cases not in line with this holding are overruled, yet they establish the rule which we have just stated so firmly that it is our duty to follow it although there may be other cases apparently out of harmony with these decisions.

There is, apparently, a slight modification of this rule in cases in which the party on whom rests the burden of proof finds that his case is made by the testimony of the other party. This, however, is not in conflict with the rule as we have stated it. A party by introducing witnesses vouches for their credibility and hence the weight and credibility of such testimony is eliminated from the consideration of the jury; and therefore when such party by the uncontradicted evidence of his own witnesses makes a case for his opponent, the court may give a peremptory instruction based upon that testimony. [Mockowik v. Railroad, 196 Mo. 550, 94 S. W. 256.] The only basis on which a peremptory instruction to find for the defendant in this case could be given would be that plaintiff's own testimony affirmatively shows that he was guilty of contributory negligence. We do not think his testimony is of such a character as to warrant a peremptory instruction against him on that issue. Hence the trial court in refusing to give the directed verdict asked by defendant committed no error.

While plaintiff was on the witness stand he testified that as the engine passed over the crossing an unusual amount of steam was escaping. This testimony was offered in support of an allegation to that effect contained in the petition. On cross-examination of the witness it developed that he was not qualified to testify on that subject and the court permitted the plaintiff to withdraw from the jury all the testimony relating to this issue. The defendant asked the court

to instruct the jury to disregard all the testimony relating to the escape of steam. This instruction was refused, but at the request of defendant, the court instructed the jury that the testimony that the escape of steam was unusual was withdrawn and to disregard the same in making up their verdict.

When it is remembered that plaintiff was not injured in a collision, but that his team was frightened by the approaching train, then it must be admitted that evidence as to the noise that the train was making and all that happened at the crossing was admissible in support of plaintiff's theory that his team was frightened, and was competent as part of the *res gestae* or facts forming part of the transaction, and we cannot say that the court committed error in not giving the instruction asked by defendant directing the jury not to consider the testimony.

Appellant also complains of plaintiff's instruction numbered two. By this instruction the court told the jury that if plaintiff after becoming aware of the approaching engine could not with safety have turned around and escaped, and that plaintiff was in the exercise of due care at the time, and that failure to give one or the other of the statutory signals was the sole cause of the injury, the verdict should be for the plaintiff.

The plaintiff testified that he could not turn around on account of the ditch, and that he therefore concluded it would be safer to get over the track and he hurried across.

Technically speaking, the instruction is open to criticism although it does require the jury to find that plaintiff was in the exercise of due care at the time and it would have been better had it submitted in general terms the conduct of plaintiff while caught in the place of danger, but the law is that when a person is suddenly and without his own fault placed in a place of apparent danger, he is not required to exercise the

same degree of thoughtfulness that he is under other circumstances. The evidence as to the condition of the public road where the accident took place as to whether plaintiff could have turned around was conflicting and therefore properly for the consideration of the jury. The instruction is also assailed by the appellant because it singled out one method of escape and impliedly took from the consideration of the jury the question whether he could have escaped by getting out of the buggy and holding the heads of the ponies. After some hesitation plaintiff finally testified that he could not have held his team under the circumstances. The question at best was pure conjecture as to whether the horses under the circumstances were so frightened that they could or could not be controlled. The court at the instance of defendant gave the following instructions:

"The court instructs the jury that if the plaintiff Davidson at any time before he attempted to cross in front of defendant's train, so close as to cause his team to be frightened and run away, could have by looking or listening for the approaching train seen or heard the same coming, then your verdict must be for the defendant, no matter what other facts you may find and regardless of what is said in any other instruction."

"The court instructs the jury that the duty imposed by the statute upon defendant railroad company to ring its bell or blow its whistle upon approaching a public railroad crossing does not relieve the traveler upon the public highway, and did not relieve the plaintiff of the duty of looking and listening for an approaching train, and that if you further find and believe from the evidence that by looking or listening for the approaching train plaintiff could have seen or heard the same in time to have prevented his team from running away by the exercise of ordinary care on his part, then your verdict will be for the defendant."

When the instructions are all considered together on the question, we think the defendant suffered no prejudicial injury.

For the reasons herein appearing the judgment is affirmed. *Cox, J.,* concurs. *Gray, J.,* dissents, and files separate opinion.

## DISSENTING OPINION.

GRAY, J.—In Porter v. Railroad, 199 Mo. 82, 97 S. W. 880, it is said: "It is well settled in this state that when a traveler approaches a railroad crossing he must look both ways and listen for coming trains, and the negligence of the company in failing to give proper signals will not excuse the traveler's duty to look and listen."

It is also well settled that a railroad track is in itself a warning of danger, and one who attempts to cross it must act with care proportionate to the danger, and if the traveler, by looking, could have seen the train approaching, the mere fact that he testifies that he did look and did not see, does not entitle him to have the question submitted to the jury. [Sanguinette v. Railroad, 196 Mo. 466, 95 S. W. 386.]

I agree that in determining whether plaintiff, because of his own negligence, had a case for the jury, defendant's testimony, where controverted, cannot be considered, and that plaintiff is entitled to the full force of all uncontroverted facts and to all his controverted evidence, and is to be allowed every reasonable and favorable inference of fact deducible from all the evidence; also that the question of contributory negligence is for the jury, where the facts are in dispute, and where though undisputed, they are such as to lead the minds of reasonable men to different conclusions. I am also of the opinion the plaintiff, by his own testimony, made a prima facie case, and

164 App.—46

if he had offered no other witnesses, but had relied solely on his own testimony, his case might have been properly submitted to the jury. When he testified that he could not see the train coming and did not hear it, although he looked and listened, and that no statutory signals were given and he was injured, he made a prima facie case. The question of his contributory negligence was an affirmative defense, and he had the right to have the jury pass upon the credibility of defendant's witnesses, who testified in support of this defense.

The plaintiff, however, did not rest with his own testimony, but offered two other witnesses who testified that the train could have been seen for a half mile up the track by plaintiff at all times while he was on the highway, from the time he reached a point within 245 feet of the crossing until he had passed over the same. In other words, these witnesses testified that from the time the plaintiff came within 245 feet of the crossing, until he had passed over it, he had a plain view down the track for a half mile from the crossing, and could have seen the train coming for that distance. One of these witnesses had lived for thirty-four years in that neighborhood, and was examined by the plaintiff on direct examination for the purpose of showing that he was perfectly familiar with the crossing, and had observed the conditions surrounding it. The other witness had lived five or six years in the vicinity of the crossing, and was well acquainted with the surroundings. As stated in the majority opinion, these witnesses were corroborated by six disinterested witnesses who testified for the defendant, and also by three photographs, the correctness of which plaintiff did not dispute.

It is my contention that when the plaintiff's witnesses testify to a certain fact and the witnesses for the defendant testify to the same fact, and there is no conflict in their testimony, there is no issue of fact

to submit to the jury. I give full recognition to the rule that where the plaintiff has testified to certain facts which are contradicted by his own witnesses, that he still has the right to have the jury pass upon his credibility and weigh the testimony and find for him, although to do so is to return a verdict inconsistent with and contradictory to the testimony of his other witnesses.

I do not find in this case, however, any such conflict in the testimony of the plaintiff and his witnesses. The plaintiff testified as follows:

"Q. When you travel along that public road west of the orchard and as you get further north, state how the obstruction of the trees is then, whether you can see better than when you are further south, or worse, as you get up nearer the north end of the orchard? A. You can't see the train coming at all.

"Q. Why not? A. Well, it is a valley back there. .

"Q. Back where? A. Back; about a half a mile back there is a valley there.

"Q. Public road or railroad? A. I mean on the railroad. There is a valley there, and trains, come right up out of that dirt cut, and that cut is growed up with weeds and grass and stuff, and you can't see back that way for that until you get on the right of way; growed up with weeds and brush and stuff, and it is kind of a little cut there, and you couldn't see the train no distance unless you got up onto the main track on the railroad; then you could look straight down the track and see it, but if you got out ten feet to one side you positively couldn't see no train coming, because the grass and weeds and stuff there will hide the view of it.

"Q. Now, when you got to that point I have spoken of, that would be due west of the last three? A. Yes, sir.

"Q. Going a little further north of that, just

passing the last tree, could you then, by turning around, see back down the track? A. No, sir.

"Q. Because of these things you have mentioned? A. Yes.

"Q. How far on north in the usable part of the public road before you can see any distance down the track? A. You will get in ten feet of the crossing before you can see any distance at all. You will get 220 or 230 feet north along the right of way before you can look back and see the train coming. You have got to get where you can look through that cut, because— it is not so very deep, but you take weeds and grass that grows up on that bank, will prevent you from seeing. . . .

"Q. In coming towards the crossing, within three or four hundred feet of the crossing, southeast, would it be an up grade or down grade, approaching the crossing from the southeast? A. Take it a half a mile south and it is in a valley. After it leaves that it comes to a little grade and on to a level.

"Q. About how far does that level begin from the railroad crossing? A. Well, I couldn't say. It is not very far, though.

"Q. Well, what is your mind of 'not very far?' A. Well, I could'nt say as to that."

On cross-examination, he testified:

"Q. You took no measurements of any kind? A. No, sir.

"Q. There was another road crossing just like that right down there—down there a half a mile? A. Yes.

"Q. And the train crossed that crossing before it crossed that crossing where your team was scared? A. Yes.

"Q. How is the road, up grade or down grade, from your crossing to that crossing? A. About level —I don't know."

It will be noticed from plaintiff's testimony that he ascribed his inability to see the train coming, to a dirt cut which was covered with weeds and grass, and that he could not see the approaching train until he got to a point where he could look through that cut. He did not undertake to say at what distance the cut was from the crossing, although he was examined on both direct and cross-examination on this material point. He simply said he did not know how far it was; that he had made no measurements, and it was not very far. All the testimony tended to show that this cut was very close to another crossing, which was a half mile from the crossing where plaintiff was injured. If the burden had been on plaintiff to establish the fact that he could not have seen the train coming a quarter of a mile from the crossing, his testimony would have wholly failed to do so. This being true, there was absolutely no conflict between the plaintiff's testimony as a witness in his own behalf, and the testimony of his other witnesses who testified for him, and therefore, it may be said that the testimony of plaintiff's witnesses, as well as those of the defendant, all agreed that the train was in plain view and could have been seen by the plaintiff at any time after it came within a quarter of a mile of the crossing.

In Richey v. Woodmen of the World, 146 S. W. 461, the Kansas City Court of Appeals, in an opinion by Judge JOHNSON, held, that where the witnesses of a party are supported by the witnesses of an adverse party, the uncontradicted facts must be deemed proved, and there is no issue for the jury. It is further held in that case that where the defendant relies on an affirmative defense, that such defense may be so clearly and indisputable established that its existence should be accepted by the court as proved in law, and where all the evidence in the case is of such character that it affords no room for reasonable controversy,

there can be no issue, and therefore, nothing concerning such fact for the jury to determine.

As I construe the majority opinion, it recognizes the correctness of the rule declared by the Kansas City Court of Appeals in the Richey case, and there·fore, our differences are confined to the proper construction to be given plaintiff's testimony. My associates are of the opinion that he did testify that he' could not see the train coming, because of certain obstructions, while as I construe his testimony, he did not testify that such obstructions were within a quarter of a mile of the crossing. If I am correct, then the case falls within the rule of the Richey case, and the judgment should be reversed and the cause· remanded.